*Fairfield,*
June, 1836.

Lester
*v.*
The State.

LESTER and another *against* THE STATE OF CONNECTICUT.

A petition for a new trial is addressed to the discretion of the court, and will not be granted but upon substantial, and not upon merely formal grounds; nor where the court can see that strict justice has been done.

A new trial will not be granted on the ground of newly discovered evidence, if that evidence might have been adduced, on the former trial, by the use of due diligence; nor to let the party into a defence, of which he was apprised at the former trial.

Therefore, where *A* and *B*, having been bound over to the superior court, on a charge of burglary, and having failed to procure bonds, were committed to prison, by virtue of a *mittimus*, from which it appeared, that they were ordered to become *jointly* bound, with sureties, for their appearance; and during their imprisonment, they assaulted the gaoler and his assistant, with a deadly weapon, and maliciously attempted to take their lives; being subsequently indicted for this offence, they were tried and convicted; on a petition for a new trial, on the ground that the *mittimus*, by which they were committed to prison, was irregular and void, and that their counsel, not being informed of the contents of such *mittimus*, but supposing it to be a valid warrant, in order to avoid the prejudice which might have been excited in the minds of the jury, by the statement and proof of the cause of the comitment, admitted the legality of the imprisonment, by reason of which admission, the petitioners were found guilty; it was held, that they were not entitled to a new trial.

THIS was a petition for a new trial. From the statements set forth in the petition, it appears, that on the 26th day of *May*, 1834, the petitioners and one *Thomas Vandole* were bound

over to the superior court, then next to be holden in the county of *Fairfield*, on the charge of burglary : That having failed to procure bonds for their appearance, they were committed to the gaol in *Fairfield*, by virtue of a *mittimus*, issued by *Stephen Smith*, Esq., the justice before whom the complaint of the grand juror was made returnable : That on the 29th day of *June*, 1834, and while held in prison in virtue of said *mittimus*, the prisoners, with a view to escape from said gaol, made an assault on the bodies of *George Peck*, the gaoler, and of *Peter Clemens* and *Samuel Burritt*, his assistants : That at the term of the superior court, holden at *Danbury*, in and for the county of *Fairfield*, on the 4th *Tuesday* of *September*, 1834, the grand-jury within and for said county, found a bill against the petitioners, therein presenting ; That on said 29th day of *June*, the petitioners did, with force and arms, and of their malice aforethought, make an assault upon the body of the said *George Peck*, with intent him to kill and murder ; and did, with like force and arms, and of their malice aforethought, strike and beat the said *Peck* upon his head, with a heavy and deadly club, with intent him to kill and murder ; and that the life of the said *Peck* was thereby greatly endangered. And the grand-jurors did further present, that the petitioners, with the like wicked and felonious intent, made a like assault on the body of the said *Burritt :* That on this indictment, the petitioners were arraigned before said superior court, tried, and convicted, and sentenced to be imprisoned in the *Connecticut* state prison,—the said *Lester* for and during the term of his natural life ; and the said *Tower*, [the other petitioner] for the term of twenty years. The petition then sets forth, at length, the evidence given before the court and jury, on the trial ; from which it appears, that an assault of a very high-handed and aggravated character was committed, by the petitioners, upon the bodies of *Peck* and *Burritt*, with the intent charged in the indictment ; and that upon the evidence before the court, no doubt of their guilt could possibly be entertained.

The petition further states, that on the trial of the issue to the jury, it was material on the part of the prosecution, to prove, that at the time of committing the supposed offences charged in the indictment, the petitioners were lawfully held in custody in said gaol, and had no right to make, or attempt to make

their escape therefrom; and that the attorney for the state, at the commencement of the trial, was proceeding to inform the court and jury of the cause of the commitment of the petitioners, when their counsel, who were not informed of the contents of the *mittimus*, and supposed the same to be a valid warrant, in order to avoid the prejudice which might be created in the minds of the jurors against the petitioners, by the statement and proof of the charge, for which they were committed, admitted, that they were legally held in custody in said gaol, at the time mentioned in the indictment. And thereupon no proof was offered, and no question made on that point, during the trial.—And the petitioners further stated, that the admission was made, by their counsel, without any consultation with them, or consent on their part,—and was not objected to, by them, because they believed, that their counsel were well advised with regard to said *mittimus*, and held it to be a legal and valid warrant: by reason of which admission they were found guilty on said trial. And they claim, that said *mittimus* was void, and gave the gaoler no authority to hold them in custody. The *mittimus* is set forth at length, in the petition; and that part of it, on which the question whether it be a void warrant, arises, is in these words: "I do find that the said *Benjamin, John* and *Thomas* are guilty; and thereupon it is ordered, that the said *Benjamin, John* and *Thomas* become bound, with two sufficient sureties, to the treasurer of the state of *Connecticut*, in the sum of five hundred dollars, conditioned that the said *Benjamin, John* and *Thomas* shall appear before the superior court, next to be holden at *Danbury*, within and for said county, then and there to answer said complaint, and abide final judgment thereon."

Upon these facts the petitioners asked for a new trial. To this petition there was a demurrer; and the questions arising upon it, were reserved for the advice of this court.

*Betts* and *Booth*, for the petitioners, submitted the case without argument.

*Sherman*, contra.

BISSELL, J. The *mittimus* is claimed to be void on the ground that the petitioners and *Vandole* were ordered to be-

*Fairfield,*
*June, 1836.*

*Lester*
*v.*
*The State.*

come *jointly* bound, with sureties, for their appearance : that each was to become bound, not only for his own appearance, but for the appearance of the others. But the view taken of this case, by the court, renders it unnecessary for them to express any opinion upon the question regarding the validity of the *mittimus.* The objections taken to it, if well founded, are purely *technical ;*—and there are are other grounds, upon which, we are clearly of opinion, that this application must be denied.

It hardly need be remarked, that a petition for a new trial is addressed to the discretion of the court, and will never be granted but upon substantial, and not upon merely formal grounds ; nor where the court can see, that strict justice has been done. *Stokes* v. *Saunders,* admr. 3 *Doug.* 401. (26 *Serg. & Lowb.* 163.) *Wilkinson* v. *Payne,* 4 *Term Rep.* 468. *Smith* v. *Frampton,* 2 *Salk.* 644. *Barber* v. *Brace,* 3 *Conn. Rep.* 9. *White* v. *Trinity Church,* 4 *Conn. Rep.* 188. *Kimball* v. *Cady, Kirb.* 41. *Lewis* v. *Hawley,* 1 *Conn. Rep.* 49. 3 *Bla. Com.* 392.

What then, are the claims of these petitioners ? And what is the case which they bring before the court ?

The claim is, that there is an informality in the *mittimus,* by which they were held in custody ; and which, in technical strictness, rendered their imprisonment unlawful ; and, therefore, instead of resorting to the proper tribunals for redress,— they assaulted the gaoler and his assistants, with a deadly weapon ; and with malice and settled design, attempted to take their lives.

They knew the contents of the *mittimus.* Did they then believe, that they were lawfully imprisoned ? If they did, they clearly incurred all the moral guilt, which would have rested upon them, had the imprisonment been strictly legal.

If they knew the imprisonment to be unlawful, this presents another alternative equally fatal to this petition, as will be shewn hereafter.

Again ; a new trial will never be granted on the ground of newly discovered evidence, if that evidence might have been adduced, on the former trial, by the use of due diligence ; nor will it be awarded, to let the party into a defence, of which he was apprised at the former trial. *Cooke* v. *Berry,* 1 *Wils.* 98. *Noyce* v. *Huntington, Kirb.* 282. 1 *Sw. Dig.* 787. *Vernon* & al. v. *Hankey* & al. 2 *Term Rep.* 113.

In the case of *Penprase* v. *Johns* & al. 2 *Nev. & Mann.* 376. (28 *Serg. & Lowb.* 362.) which was an action against magistrates for a distress under a regular conviction, *but by a warrant informal in not setting out the jurisdiction,* the court, after verdict for the defendants, refused to grant a new trial, *the objection to the warrant not having been taken at the trial, and being strictissimi juris.*

These principles are founded in the highest reason and good sense ; and their applicability to the case under consideration, is exceedingly obvious.—Might not the ground upon which this application is rested, have been taken on the trial ? Suppose the *mittimus* had been read in evidence, and not objected to ; would the court grant a new trial, for the purpose of suffering the objection to be raised ?

But it is said, the petitioners' counsel were not informed of the contents of the *mittimus,* and supposed it a valid warrant. And why were they not informed ? It was only necessary for them to read the document. But were the petitioners ignorant of the informality ? If they were so, we have seen the consequence. If they were not, why were not their counsel instructed ?—They did not object to, but acquiesced in, the course that was taken. And why was that course taken ? We are told. It was to prevent that prejudice, which might have been created in the minds of the jury, by a statement of the cause of the commitment. The petitioners adopted a course, which they thought the most likely to induce their acquittal. It has proved unfortunate : and we are now asked to grant this application to let them into a defence, of which they might have availed themselves on the former trial.—If parties might be permitted thus to speculate, there would be no end to trials ; and the mischiefs thus introduced would be beyond endurance.

We would hesitate long before we granted a new trial upon mere technical grounds ; and especially, when we can see, that the great ends of justice are not to be subserved. We know of no principle and no analogy within which this petition can be sustained.

Let the superior court be advised, that the petition is insufficient.

In this opinion the other Judges concurred.

Petition insufficient.