# THE STATE vs. J. EDWARD LEE.

Third Judicial District, New Haven, January Term, 1897. ANDREWS, C. J.,
      TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

In view of the long established policy in this State to give to the defendant
    in a criminal prosecution substantially the same remedies by way of
    motion for a new trial or by proceedings in error, as are given to parties
    in civil causes, the provisions of Chap. 51 of the Public Acts of 1893
    relating to motions for new trials for verdicts against evidence, must
    be held to apply to criminal cases, notwithstanding the statute is enti-
    tled "An Act concerning New Trials of Civil Actions."
Unless the verdict is palpably and manifestly against the evidence a new
    trial will not be granted on that ground.
A motion for the continuance of a cause is one addressed so largely to the
    discretion of the trial court, that its determination will not be inter-
    fered with unless the record shows a clear case of the abuse of such
    discretion.
Under the practice in this State the accused is not entitled, as matter of
    ·strict right, to examine each juror under oath; but the practice is con-
    trolled largely by the discretion of the trial court.
Conduct of a woman immediately after an alleged assault with intent to
    procure an abortion had been committed upon her, tending to show
    her fear of the accused and her anxiety to escape his observation, held
    admissible in corroboration of evidence of the assault. Held, also,
    that she might testify that her conduct was due to her fear of the
    accused.
Section 1411 of the General Statutes, under which the accused was prose-
    cuted, forbids the use of any means intended to procure a miscarriage
    or abortion, "unless the same be necessary to preserve" the life of
    the woman or that of her unborn child. Held that while the lack of
    necessity was an element of the crime which the State was bound to
    allege and establish, there was also a presumption of law that an
    abortion or miscarriage was not necessary to save life, upon which the
    State, in the absence of any evidence to the contrary, might properly
    rely to establish the truth of that averment.

[Submitted on briefs January 19th—decided April 6th, 1897.]

PROSECUTION for felonious assault with intent to procure
a miscarriage and abortion, brought to the Superior Court in
New Haven County and tried to the jury before *Thayer, J.;*
verdict and judgment of guilty, and appeal by the accused
for alleged errors in the rulings and charge of the court.
*No error.*

The accused also filed two motions for a new trial for a verdict against evidence, both of which were denied or overruled by the court below. In this court the State moved to erase and dismiss the motion for a new trial which was directed to this court. *Motion denied.*

The case is sufficiently stated in the opinion.

*Prentice W. Chase,* for the appellant (the accused).

The court should have continued the cause upon motion of the defendant. *Thomas* v. *State,* 36 Tex. 316; *State* v. *Darkins,* 52 Iowa, 395; *State* v. *Linis,* 74 Mo. 222; *Metts* v. *State,* 28 Ga. 271; *Betts* v. *State,* 66 id. 508; *State* v. *Poe,* 8 Lea (Tenn.), 647. The court erred in refusing to permit the defendant to examine each juror under oath. The motion was made for the purpose of obtaining an impartial jury. It has been customary in this State to permit such a motion, and it should receive the sanction of the law at this late day. *State* v. *Allen,* 46 Conn. 545; *State* v. *Potter,* 18 id. 175; *State* v. *Wilson,* 38 id. 137. The evidence in question did not prove or tend to prove the acts alleged upon which the State relied to prove the crime. Greenl. on Ev., § 51*a*; *Haughey* v. *Strickler,* 2 W. & S. 411; *Belden* v. *Lamb,* 17 Conn. 441. Section 1411 of the General Statutes is a penal statute and should be construed strictly. If the elements of the crime contained in the statute are all essential to the crime, they should be pleaded and also proven by the party alleging them. *State* v. *Mosier,* 25 Conn. 43; *U. S.* v. *Goodin,* 12 Wheat. 460; *State* v. *Barr,* 39 Conn. 43; *Com.* v. *Hardman,* 9 Gray, 136; *Com.* v. *Kimball,* 24 Pick. 366; *Com.* v. *Maxwell,* 2 id. 139, 141; *Com.* v. *Thurlow,* 24 id. 374; *Com.* v. *Hart,* 11 Cush. 130; *Com.* v. *Fitchburg R. R.,* 10 Allen, 189; *State* v. *Miller,* 24 Conn. 527. The verdict was against the evidence, and upon this ground the accused is entitled to a new trial.

*William H. Williams,* State's Attorney, with whom was *Alfred W. Wheeler,* for the appellee (the State).

The matter of continuance was wholly within the discre-

tion of the trial court, and the exercise of that discretion will not be reviewed by this court. *Clinton* v. *Hopkins*, 2 Root, 25; *Smith* v. *Holebrook*, ibid. 45; *White* v. *Portland*, 63 Conn. 18; *Lewis* v. *Havens*, 40 id. 363, 370; *Gainty* v. *Russi*, ibid. 450. The motion of counsel for the accused " for permission to examine each juror under oath before they were allowed to take their seats upon the panel," was also a matter resting in the sound discretion of the court. *State* v. *Hoyt*, 47 Conn. 518, 529. It has never been understood in this State that such examination could be insisted upon as a matter of right. This discretion was fairly and reasonably exercised by the court. Evidence of the conduct of the woman whom the defendant had assaulted, was properly received. It all properly tended to corroborate her testimony as to the terrible ordeal to which she had been so recently subjected by the accused. The charge was correct. Even if the negative averment was essential in the information, the State might rest on the presumption that means to procure an abortion are not ordinarily necessary to save life, and call upon the accused to show his excuse for resorting to such means. *State* v. *Miller*, 24 Conn. 522; *State* v. *Powers*, 25 id. 48; *State* v. *Wadsworth*, 30 id. 59; *Adams* v. *Way*, 33 id. 428; *Hatchard* v. *State*, 79 Wis. 357; *Bassett* v. *State*, 41 Ind. 303; *State* v. *Meek*, 70 Mo. 355; *State* v. *Moody*, 17 Ohio State, 111; *State* v. *Owen*, 22 Minn. 238; *Hinckley* v. *Penobscot*, 42 Me. 89; *State* v. *Crowell*, 25 id. 173; *State* v. *Whittier*, 21 id. 341; *Payne* v. *State*, 74 Ind. 205; *Bradford* v. *People*, 20 Hun, 309; *Weed* v. *People*, 56 N. Y. 628; 1 Amer. & Eng. Ency. of Law (2d ed.), 187, note 2, 195, note 4; 3 Russ. on Crimes (Internat. ed.), 96, 400, 403; *Mills* v. *Com.*, 13 Pa. St. 631; Bish. Stat. Crimes, § 744; *State* v. *Hoyt*, 46 Conn. 337. The verdict is amply sustained by the evidence. Any other verdict upon this evidence would have been a shock upon justice.

TORRANCE, J. In the court below the defendant, Lee, was convicted of the statutory crime of procuring an abortion or miscarriage, upon the woman named in the information,

and by means therein described.    Within six days after
judgment, Lee filed in the trial court a written motion for
a new trial, on the ground that the verdict was against the
evidence; which motion the judge overruled.    Thereupon
the defendant filed a written motion, in substance requesting
the judge to certify the evidence in said cause to this court
for its consideration, to the end that a new trial might be
had if this court should be of opinion that the verdict was
against the evidence.    This motion and request the judge
denied; but that the defendant might not be injured by
said rulings, if erroneous, the judge certified said evidence
and made it with said motions and rulings a part of the
record.

The defendant also appeals from the judgment of the court
below in this cause, for the matters set forth in his reasons of
appeal.    In this court the State filed a written motion to dis-
miss the defendant's motion for a new trial for a verdict
against evidence, for the following reasons, in substance :
(1) Because the defendant had not appealed from the action
of the court below in overruling and denying his request and
motion to have the evidence certified to this court.    (2) Be-
cause, as this is a criminal case, "this court has no jurisdic-
tion or power to entertain or grant a motion of this character,
or a new trial in a criminal case on the ground that the ver-
dict therein is against the evidence in the case."    (3) Be-
cause it does not appear that the Superior Court was dis-
satisfied with the verdict, or was of opinion that it was against
the evidence.

This motion presents the question whether the provisions
of Chap. 51 of the Public Acts of 1893 apply to criminal
cases.    In support of the view that they do not so apply, it
is urged by the State that the Act is entitled "An Act con-
cerning New Trials of Civil Actions," and that in terms it
appears to apply only to that class of actions, and not to
prosecutions for crime.

Ordinarily, the fact that the Act appears by its title and
its terms to be confined in its operation to civil actions, would
be conclusive in favor of the contention of the State, but it is

not necessarily so in this case. Under the statute first passed in 1821, and finally embodied in the Revision of 1888 as § 1127, this court has ever since exercised the power to grant new trials for a verdict against evidence in criminal cases, in favor of the accused; and yet the statute has always been printed under the head of "Civil Actions," and in terms it appears to apply only to such actions. For a great many years past it has been the general policy of this State to give to a defendant in a criminal proceeding substantially the same remedies by way of new trial or by proceedings in error, as are given to parties in civil proceedings.

In 1853 this court said that "in all cases of conviction, in criminal prosecutions, the accused, by our law, is entitled to relief by new trial, in the same manner as in civil actions; and our courts do not, in such cases, as is sometimes done elsewhere, turn the convict round to the clemency of the pardoning power, where the penalty alone is remitted, while, though he may be innocent, the disgrace and degradation remain." *State* v. *Brown*, 16 Conn. 54, 59.

This policy was expressly carried out, prior to the present statute allowing appeals to this court, by the law allowing the defendant in criminal prosecutions relief for errors of law, by way of motion for a new trial, motion in error or writ of error, as in civil cases; Rev. Stat. 1875, p. 539, § 16; and since the passage of the statute allowing appeals, it has been carried out by expressly allowing to defendants in criminal cases a remedy for errors of law, by way of appeal or by writ of error, as in civil causes. General Statutes, § 1635. But the power to grant a new trial, in a criminal case, in favor of the defendant, for a verdict manifestly against the evidence, has never been in express terms conferred either upon this court or the Superior Court. The Act of 1762, finally embodied with no substantial change of terms in § 1125 of the General Statutes, gives to the courts named in said section power to grant new trials for the causes therein named; but this relates to civil actions, and has always appeared under the head of "Civil Actions" in our statutes. Notwithstanding this, however, the Superior Court has for a great

many years exercised the power to grant new trials in crim-
inal cases, under the authority of this statute. Under this
statute it has entertained petitions for a new trial for newly-
discovered evidence, in numerous criminal cases. *Lester* v.
*State*, 11 Conn. 415; *Andersen* v. *State*, 43 id. 514; *Shields*
v. *State*, 45 id. 266; *Hamlin* v. *State*, 48 id. 92. So far as we
are aware, however, the Superior Court has never, under the
law embodied in § 1125, attempted to grant a new trial in a
criminal case for a verdict against evidence; and whether it
now possesses such a power under the decision in *Bissell* v.
*Dickerson*, 64 Conn. 61, is a question upon which it is unnec-
essary to express any opinion.

In 1821 power was conferred upon this court, under cer-
tain circumstances, to grant new trials for verdicts against
evidence. The law conferring this power, with no substan-
tial change of terms, was embodied in the Revision of 1888,
as § 1127; and as before stated it in terms seems to relate
only to civil actions and has always appeared under that title.
It has, however, always been regarded as conferring upon
this court power to grant a new trial for a verdict against
evidence in criminal cases, in favor of the defendant, as well
as in civil causes in favor of either party; and this practical
construction of the statute has prevailed for many years. As
early as 1838 this practice of seeking relief in this court in
criminal cases, for verdicts against evidence, seems to have
been firmly established. *State* v. *Lyon*, 12 Conn. 487. In
that case the defendant was convicted of burning a shop, and
moved for a new trial on the ground that the verdict was
against the evidence; this court granted a new trial. The
right of the defendant in that case to the relief sought is
taken for granted by court and counsel, for no question is
made about it. In *Andersen* v. *State*, 43 Conn. 514, 516,
CARPENTER, J., speaks of the power of this court in both
civil and criminal cases to grant a new trial where the ver-
dict is against the evidence, and seems to ground the exclu-
sive power of this court to do so in both cases, upon the law
of 1821 as then embodied in the Revision of 1875, Title 19,
Chap. 15, § 3. During the time this statute was in force

numerous motions for new trials in criminal cases, made by defendants for verdicts against evidence, have been brought to this court and considered by it; so that the practice in this respect must be regarded as firmly established.

Under § 1127 of the General Statutes, however, as it stood prior to the Act of 1893 before referred to, such motions could be brought to this court only under certain restrictions and conditions prescribed in said section, one of which was, among others, that the trial court should be of opinion that the verdict was against the evidence. The Act of 1893 in effect repealed § 1127, and provided among other things that such motions could be brought to this court without reference to the opinion of the trial court upon the question whether the verdict was against the evidence, and introduced other changes in the method and manner of bringing such motions to this court. *Bissell v. Dickerson*, 64 Conn. 61. Although the Act of 1893 contains provisions as to the manner of bringing such motions before this court, radically different from those contained in the old § 1127, yet we think it should be construed as applying to criminal as well as civil cases, just as the old section was. " The principal mischief which the Act of 1893 had in view evidently was that a verdict might be returned which was palpably against the evidence, and yet the trial court take a different view of it and decline to report the evidence for the consideration of the court;" *Bissell v. Dickerson, supra*, p. 70; and to construe it as taking away the power of this court to consider motions of this kind in criminal cases—a power exercised under the old statute since 1821—simply because of its title or its terms, would we think, under the circumstances, be a harsh and unwarranted construction. We are of opinion that the motion for a new trial for a verdict against evidence in the case at bar, is properly before this court.

The next question is whether the verdict in this case is so palpably and manifestly against the evidence as to warrant this court in granting a new trial on this ground. The Act of 1893 has made no change in the principles which determine under what conditions a verdict may be set aside as

against evidence; *Johnson* v. *Norton*, 64 Conn. 134; and those principles have been so recently stated in the case just cited, and in *Brooks' Appeal from Probate*, 68 Conn. 294, that any further reference to them here is entirely unnecessary. After reading the entire evidence carefully and duly considering the same, we deem it sufficient to say that the verdict is not against the evidence.

The questions next to be considered are those specified in the reasons of appeal; and these relate to certain rulings of the court below, five in number, and to certain portions of the charge to the jury.

The first error assigned is the action of the court in refusing to continue the case to the next criminal term, as requested by counsel for the defendant. This motion to continue was made on October 20th, during the trial of another case before the court below in which the counsel for the defendant was then engaged, and was based upon the ground that if the trial of the case at bar were to follow the one then upon trial, the defendant's counsel would not have time to prepare a proper defense. The court refused to continue the case, but directed that it should not be called earlier than the 27th of October. This was a matter largely within the discretion of the trial court, and one in which this court ought not to interfere unless the record shows a very plain and clear case of the abuse of such discretion to the great prejudice of the defendant. The record shows nothing of the sort. For aught that appears the discretion vested in the trial court was wisely and fairly exercised, and the defendant took no harm from the refusal.

The next assignment relates to the refusal of the court to permit the defendant's attorney to examine each juror under oath. Upon this point the record shows that the attorney for the defendant moved for permission to examine each juror under oath, giving as his reasons therefor the following: "That the case had become so notorious through newspaper publications and because of the fact that the defendant had been repeatedly tried in said court for charges and crimes of a similar nature, that it would be difficult to find twelve men

in the county who had not formed an opinion of the case, or who had not become prejudiced against the accused. . . . A similar motion by the same counsel had been made in the last preceding case, State v. Morse, and had been granted, and the jurors had each been exhaustively examined by counsel, and had been fully instructed by the court as to what matters of opinion, bias, relationship, etc., would disqualify them to sit in any criminal cause. The court was of opinion that a panel of fair jurors to try the defendant's case could be obtained if impaneled in the customary way, and overruled the defendant's motion. The attorney for the State then stated to the jurors the name of the case and the nature of the charges against the accused, and requested that if any of them knew anything of the case, or had formed any opinion as to the guilt or innocence of the accused, or knew any reason why they could not as wholly disinterested and impartial men try the case between the State and the accused fairly, to make it known so that they might be excused. Counsel for the defendant was then asked if he desired to make a statement to the jury, and he said that he did not. The court then instructed the jury that if any of them had formed any opinion in regard to the case one way or the other, either from reading newspapers or hearing about the case, or if related to the parties or conscious of any reason why they should not sit upon the case, it was their duty to make it known to the court that they might be excused. Thereupon two members of the panel informed the court that they had formed opinions in regard to the case; and it appearing to the court upon inquiry that the opinions formed were of such a character as to disqualify those jurors to sit upon the case, they were excused by the court. The jurors remaining were then called, an opportunity given to the State and the accused for peremptory challenges (neither of whom exhausted his challenges), and from those jurors remaining after such challenges a panel was chosen by lot and duly sworn."

Under our practice the accused was not entitled, as a matter of strict right, to have the jurors sworn as requested, this being a matter which is left largely to the discretion of the

trial court.  *State* v. *Hoyt*, 47 Conn. 518.  In the case at bar
this discretion appears to have been properly exercised, and
the record fails to show how the defendant was in any way
harmed by the refusal of which he complains.

The next three reasons of appeal relate to rulings upon
evidence, and may be considered together.

Upon the trial the State offered evidence to prove and
claimed to have proved that the defendant, on the 24th day
of September, 1896, took the woman named in the informa-
tion, who " was then six months pregnant with a child be-
gotten by him, to a place called the Mansion House " in
Derby, and that there on the following day at or about noon,
" with the intention to procure an abortion, he assaulted her,
and used the means set forth in the information to procure a
miscarriage, and that shortly afterwards, without the knowl-
edge of the accused, she left the Mansion House and went to
the railroad station, where she remained in the toilet room
until the arrival of the train for New Haven ; that she then,
with the aid of the conductor of the train, made her exit from
the station through a window, entered the baggage car, and
rode in the baggage car to New Haven, and there went to
Grace Hospital; and that on the same day at about five
o'clock in the afternoon, at the hospital, she was delivered
of a still-born child as the result of the defendant's said oper-
ation at the Mansion House."   The woman was called as a
witness for the State " and described what occurred before
and after the arrival of herself and the defendant at the
Mansion House, and her going therefrom to the railroad sta-
tion at Derby, and her awaiting the train there."   After this
testimony was given, the State's Attorney asked this witness
on her direct examination the following question:  " Describe
your coming to New Haven ; how you came, and what you
did."   The defendant objected generally to this question,
but the court overruled the objection and the defendant ex-
cepted.   The witness then stated, in substance, that she
waited in the toilet room of the station for half an hour till
the train came, because she was afraid of the defendant who
was then standing on the station platform ; that she left the

railroad station through a window, entered a baggage car and rode to New Haven in it. The conductor of the train was called as a witness by the State, and having testified that he saw the woman standing in the toilet room looking out of the door of the station, was then asked by the State's Attorney to describe what was done. The defendant's attorney then said, " I object to what was done." The objection was overruled and an exception taken. The witness then stated, in substance, that the woman backed out of the window feet first, got into the baggage car and rode to New Haven in it. He was then asked about her appearance. Counsel for defendant objected, the objection was overruled, and the defendant excepted. The witness answered as follows : " She was very nervous, excited, and looked awful careworn and haggard. She looked as if she had been through a great deal." None of the occurrences thus testified to were claimed by the State to have been in the presence of the defendant.

Under the circumstances disclosed by the record, we think this last objection was very properly overruled. The evidence objected to, whatever may be said as to its weight, which was a matter for the jury, tended to support the claims of the State with reference to what had been done to this woman in the forenoon of that day by the defendant. The State was also, we think, entitled to show that the woman left the Mansion House and went to the hospital in New Haven, and was there on the same day delivered of a still-born child as the result of the operation performed upon her by the defendant in Derby; and was also entitled in a general way to show by what means she left Derby and reached the hospital. Her manner of entering and leaving the station at Derby was unusual. It tended to show an anxiety on her part to escape observation, and particularly the observation of the defendant. If, in fact, her object was to avoid his eye, and this because she stood in fear of him, the acts in question would serve to confirm the evidence previously introduced of the brutal violence which she had recently suffered at his hands. The Superior Court did not err in allowing her to testify that such were the reasons why she acted as she did. Her con-

duct was material only in view of the cause for it, and she knew best what that cause was. The story could not be fairly understood, unless the whole of it were told. Her intent characterized her acts, but was only partly evidenced by them. To make it apparent, it was necessary to bring it out by positive testimony, and that could only come from her. The existence of a mental state, such as an apprehension of fear under certain circumstances is a fact, to be proved, like every other fact, by the best evidence of which the nature of the case admits.

The last assignment relates to the charge to the jury. The record upon this point is as follows: "The defendant's counsel orally requested the court to charge the jury that it was incumbent on the State to prove not only that the accused committed acts with the intent to commit an abortion, but that it was not necessary for the purpose of preserving the woman's life or that of the unborn child. The court did not so charge, but having instructed the jury that 'if it be so that the accused did use such means, if it appear from the evidence that it was necessary to use such means to preserve her life or that of her unborn child, then the accused could not be guilty'—charged them as follows: 'It has been claimed in reference to this matter that it is incumbent upon the State to prove not only the fact of the use of means to procure the abortion by the accused, and with the intent to procure a miscarriage, but that the State must also establish the fact that it was not necessary to save the life of the woman or the child. But the law assumes that under ordinary circumstances such means are not necessary to save the life of either the mother or the child, and the fact that it is necessary to use such means, or to procure a miscarriage, is a matter of defense, which the accused . . . may establish if such be the fact; but it is not incumbent on the State in the first instance to establish the negative, that it was not necessary. If the act is committed with the intent alleged, it is not incumbent on the State to establish the fact that it was not necessary to save the life of the mother or of the child.'"

The statute (General Statutes, § 1411) upon which the information in this case is based, prohibits the use of any means with intent to procure upon a woman a miscarriage or abortion " unless the same shall be necessary to preserve her life, or that of her unborn child." The information in this case contains two counts, and in both it is alleged that the act charged against the defendant was not necessary to preserve the life of the woman, nor that of the unborn child.

Where the exception, as here, is contained in the clause of the statute which describes or defines the crime, apparently as a part of the description or definition, it is almost universally held that the exception in the statute must be negatived in the indictment or information. Bishop's Statutory Crimes (2d ed.), §§ 755, 1042–1044, and cases cited; Wharton's Crim. Law (10th ed.), § 597, and cases cited. Assuming, then, that it was necessary to negative the statutory exception in this case, two questions arise: (1) Was it incumbent upon the State to finally establish the truth of the negative averment; (2) if so, was it bound, under the circumstances disclosed by the record, to offer testimony in support of the averment as claimed by the defendant? ,

We think it was incumbent upon the State in some way to establish the truth of the negative averment. The want of necessity was an element of the crime as charged in the information, as much so as the act or the intent charged; and the burden of proving the former as well as the latter elements, rests upon the State for the same reason, namely, because under our law it is the duty of the State to prove guilt and not that of the accused to prove innocence. See 1 Bishop's Crim. Proceed., §§ 1049–1052. The first question, then, must be answered in the affirmative.

But from this it by no means follows that the second must be so answered. The truth of this negative averment as part of the State's case, must in some way be made *prima facie* to appear at the trial; but it need not necessarily be so made to appear by evidence. For instance, where there is a presumption of law in favor of the truth of an averment of this kind, the State may in the first instance, and until evidence

to the contrary is introduced by the defendant, rest upon
the presumption, just as it might upon evidence sufficient
to make out a *prima facie* case. In such a case the burden
of proving the averment still rests upon the State, but by
the presumption it is relieved for the time being from intro-
ducing evidence in support of the averment, because the
presumption under such circumstances stands in the place
of evidence. Thus in indictments for murder, according
to what appears to be the weight of authority, the fact of
the sanity of the accused is an element of the crime, a part
of the government's case, although it is only impliedly and
not in terms alleged; and the burden of proving it, that is
the duty to show its existence in some way, rests upon
the State and remains upon it throughout the trial. *State* v.
*Jones*, 50 N. H. 369; *People* v. *Garbutt*, 17 Mich. 9; *State*
v. *Crawford*, 11 Kan. 32; *Dacey* v. *People*, 116 Ill. 555;
*Com.* v. *Heath*, 11 Gray, 303; *Brotherton* v. *People*, 75 N. Y.
159. But according to these authorities, and to all author-
ities so far as we are aware, the State is not obliged in the
first instance and as part of its case to produce affirmative
evidence of sanity. The presumption is that all men are
sane, and the State, in the first instance, and in the absence
of evidence of insanity, may rest upon that presumption. If
the accused puts his defense on the claim that he is insane,
he must introduce evidence to that effect. If he is silent the
presumption may prevail. *State* v. *Hoyt*, 47 Conn. 518.
This presumption as to sanity is founded upon the common
experience that sanity is the general rule, insanity the com-
paratively rare exception, and that what is common in gen-
eral prevails in the particular case.

We think it is equally a matter of common experience that
the ability to bear and bring forth children is the rule, and
that the necessity of procuring an abortion or miscarriage in
order to save the life of mother or child is the rare excep-
tion; that the presumption is against such necessity; and
that the State in the first instance, and in the absence of evi-
dence to the contrary, may rest on that presumption in cases
brought under the statute in question.

In the case at bar the State offered evidence of the act and the intent, as charged, and rested without having offered any specific testimony in support of the negative averment. No testimony was offered on behalf of the accused. It was under these circumstances that the request was made, and the charge given as set forth in the record. We think the court properly refused to comply with the request, and did not err in its charge as claimed in the assignment of error.

The jury were doubtless properly instructed that it was incumbent upon the State to prove all and every essential element of the crime beyond a reasonable doubt; that the burden of proof in this respect was upon the State, and that the presumption was that the accused was innocent until his guilt was proved; for no complaint is made about any part of the charge save the part hereinbefore quoted. In this part of it they were in effect told that if it appeared from the evidence that what was done by the defendant was necessary to save the life of the woman or of the unborn child, the accused could not be guilty; that the presumption was that no such necessity existed; that the State might rest on that presumption in the first instance, in the absence of evidence to the contrary; and that under such circumstances it was for the defendant to go forward with evidence if he desired to overcome the presumption against him. This we think was a correct statement of the law.

There is no error.

In this opinion the other judges concurred.