STATE OF CONNECTICUT *v.* CHESTER ORSINI

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued June 8—decided July 13, 1967

*Peter J. Zaccagnino, Jr.*, with whom, on the brief, was *Robert C. Delaney*, for the appellant (defendant).

*Richard P. Sperandeo*, assistant state's attorney, with whom were *Robert K. Walsh*, assistant state's

attorney, and, on the brief, *George R. Tiernan,* state's attorney, for the appellee (state).

## I

KING, C. J.  The defendant, Chester Orsini, hereinafter referred to as the defendant, was charged with aiding and abetting Anthony Salvatore in administering to and using other means upon a female with intent to procure a miscarriage or abortion, in violation of § 53-29 of the General Statutes.[1]

Salvatore and the defendant appear to have been separately informed against and represented by separate counsel, although they were jointly tried. From a separate judgment accepting a verdict of guilty against Orsini, and imposing sentence thereon, he took this appeal.

On the trial proper, the defendant chose not to testify, offered no evidence, and placed his reliance solely on the cross-examination of the state's witnesses and certain technical defenses hereinafter discussed.  The state's claims of proof may be rather briefly summarized.

The complainant missed her period in September and October, 1964, and consulted a Dr. Saez, who performed a pregnancy test upon her.  Later, she called a Dr. Walker, who was then in Trenton, New Jersey, in an attempt to procure an abortion. The name "Dr. Walker" was an alias which Salvatore used.  As a result of a telephone call received

---

[1] "Sec. 53-29.  ATTEMPT TO PROCURE MISCARRIAGE.  Any person who gives or administers to any woman, or advises or causes her to take or use anything, or uses any means, with intent to procure upon her a miscarriage or abortion, unless the same is necessary to preserve her life or that of her unborn child, shall be fined not more than one thousand dollars or imprisoned in the State Prison not more than five years or both."

on October 22, 1964, the complainant drove to Meriden on October 23. There she met the defendant and Salvatore and on the night of October 23 they took her to the Yale Motor Inn, in Wallingford. They asked if she had eaten and, when she replied that she had, they told her that she would have to wait until morning or she would become sick. They then took her to the Three Cups Restaurant, in Meriden, owned and operated by the defendant, and he told her that the abortion would be performed in the morning. The defendant registered the complainant in room 259 at the Yale Motor Inn, where she stayed overnight. The next morning, October 24, the defendant took her to room 260, where they met Salvatore. The defendant obtained about $390 from the complainant. She was then placed on some towels on the bed in room 260, and Salvatore inserted a sort of shoehorn device in her vagina and then a sort of long cue-tip instrument with medication on it. While this was going on, the defendant stayed at the head of the bed, engaged the complainant in conversation and gave her some white pills to take for bleeding and some green pills to take for pain. The defendant told her that, if the abortion did not work, she should take citrate of magnesia, if that did not work, she should take mineral oil, and, if nothing then happened, she should call him at the Three Cups Restaurant and they would arrange to do it again the following week. After resting awhile in her own room (No. 259), the complainant arose and started back to New Jersey. After her return home and during the night of October 24, she experienced excessive vaginal bleeding. On the next morning, she consulted a Dr. Greenberg and then went to the Hackensack, New Jersey, hospital, where she was surgically

treated by Dr. William M. Griffin, a specialist in obstetrics and gynecology.

## II

We first consider certain claims of error as to rulings on evidence and as to a claimed error in the charge, insofar as they appear in the finding and are pursued in the defendant's brief. *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 424, 216 A.2d 818; *Fleischer* v. *Kregelstein,* 150 Conn. 158, 159, 187 A.2d 241.

### (a)

At the trial, Dr. Griffin was called by the state and testified that in his opinion the complainant was either pregnant or recently had been pregnant and that she was suffering from an incomplete abortion. The defendant objected to this evidence on the ground that the opinion stated by Dr. Griffin had been based in part on the history which the patient had given him. The state claimed that the evidence was admissible, including the statements given Dr. Griffin by the complainant for purposes of treatment, under the rule of cases such as *Brown* v. *Blauvelt,* 152 Conn. 272, 274, 205 A.2d 773. The defendant claimed that the exception to the hearsay rule recognized in that case did not apply to a criminal prosecution such as this.

The defendant's claim is without merit. The underlying safeguards justifying the rule, as explained in *Brown* v. *Blauvelt,* supra, 275, are equally applicable whether the case is civil or criminal. Indeed, unless the rule were applicable to a criminal case, expert medical opinion would often be unavailable in a criminal prosecution, since it would be unusual for any physician or surgeon to

undertake medical or surgical treatment of a person without taking any history at all from him, unless his physical or mental condition was such that he was unable to give any history.

## (b)

The defendant claims that, over his objection, the complainant was allowed to testify that she was pregnant. The defendant seems to claim that the complainant herself, as a layman, could not testify as to her own pregnancy. This ruling only inferentially appears in the finding, and the question appears to have been withdrawn although after the witness had answered "Yes." This withdrawal removed the answer although the defendant could have made a motion to strike it out. He made no such motion, however, and the court was not required to act suo motu. *Hackenson* v. *Waterbury,* 124 Conn. 679, 684, 2 A.2d 215. In any event, there was no error in the admission of this testimony. Although it is true that expert medical testimony is generally required in proving the condition from which a person claims to be suffering, this is not the case in obvious or simple matters of everyday life, especially where one is testifying about his own physical condition. No one would claim that one whose arm had been amputated could not testify to the fact of the amputation, although he might not be allowed to testify as to a particular diseased condition which had made the amputation necessary. The state of pregnancy is such a common condition that a woman may give her opinion that she herself is pregnant. *State* v. *Horwitz,* 108 Conn. 53, 57, 142 A. 470; 20 Am. Jur. 720, Evidence, § 859. The underlying facts on which she bases her opinion may be brought out, as they were here, as bearing

on the weight to be given her opinion. Because of the wide range of matters on which lay witnesses are permitted to give their opinion, the admissibility of such evidence rests in the sound discretion of the trial court, and the exercise of that discretion, unless abused, will not constitute reversible error. *Jackson* v. *Waller,* 126 Conn. 294, 306, 10 A.2d 763; *Dunham's Appeal,* 27 Conn. 192, 197.

In the instant case the defendant brought out on cross-examination of the complainant that she had been pregnant once before. Thus, she had prior personal experience to support her statement that she was pregnant.

### (c)

The defendant claims that the court erred in admitting testimony of the complaining witness as to a statement to her by a Dr. Saez, whom she had consulted prior to her coming to Connecticut, and who had given her a pregnancy test, to the effect that she was pregnant. The short answer is that no such evidence was admitted. The witness was allowed to testify that Dr. Saez informed her of the result of the pregnancy test. What Dr. Saez told her as to the result of the test was neither asked of her nor admitted into evidence. Indeed, the defendant seemed to concede in oral argument that he was in error in claiming that the ruling complained of in his brief had been made.

### (d)

The information under which the defendant was tried failed to contain any allegation negating the proviso in the statute as to an abortion "necessary to preserve . . . [the complainant's] life or that of her unborn child". No question was raised as to

the adequacy of the information on this or any other ground at any time before trial, even though, as hereinafter pointed out, trial did not commence until over eleven months after the filing of the information, the arrest, the entering of the plea of not guilty and the election of trial by jury. See *State* v. *Licari,* 153 Conn. 127, 130, 214 A.2d 900. Under the rule of *State* v. *Lee,* 69 Conn. 186, 198, 37 A. 75, the negative proviso should have been alleged in the information. But we fail to see how in this particular case the omission prejudiced the defendant.

It is unnecessary for the state, in the first instance, to negate, by affirmative evidence, the statutory proviso quoted above. The state may make out a prima facie case, as stated in *State* v. *Lee,* supra, 199, through a presumption based on common experience that "the ability to bear and bring forth children is the rule, and . . . the necessity of procuring an abortion or miscarriage in order to save the life of mother or child is the rare exception." If evidence is adduced to the effect that such a necessity existed, then the state has the risk of nonpersuasion in proving, beyond a reasonable doubt, that the necessity did not exist. This was true here even though the proviso was not negated in the information. Here there is nothing to indicate that any evidence was offered tending to prove, in the slightest degree, that either the defendant or Salvatore had any concern about saving either the complainant's life or that of an unborn child or that they were motivated in anything they did by any such consideration. This is especially true in this case where the evidence was that the abortion was performed under unusual and clandestine circumstances, and by one who, as far as

appears, was not a licensed physician. See *Commonwealth* v. *Brunelle,* 341 Mass. 675, 678, 171 N.E.2d 850. The charge in effect conformed to the foregoing rule of the *Lee* case, and the defendant's claim that the charge was inaccurate or prejudicial as applied to this case is without merit, even apart from the fact that the finding indicates no specific ground of exception.

### (e)

The defendant's claim that the verdict should have been set aside because the state failed to prove the defendant's guilt beyond a reasonable doubt is pursued in the brief only in connection with the rulings on the trial already discussed, that is, that the state failed to prove pregnancy and to negate the necessity of saving the life of the complainant or her unborn child. This claim is without merit.

### III

We turn now to certain technical procedural claims having no direct bearing on the factual question of the guilt or innocence of the defendant.

### (a)

The defendant claims that his constitutional rights under the fifth amendment to the constitution of the United States were violated in that he was presented in the Superior Court on an information and was not indicted by a grand jury. The Connecticut constitution (now article first, § 8) requires the use of a grand-jury indictment only when the permissible punishment for the crime involved may be death or life imprisonment. General Statutes §§ 54-45, 54-46. "[T]here is no federal constitutional impediment to dispensing entirely

with the grand jury in state prosecutions." *Beck* v. *Washington,* 369 U.S. 541, 545, 82 S. Ct. 955, 8 L. Ed. 2d 98 (quoted in our recent case of *State* v. *Jones,* 153 Conn. 451, 457, 217 A.2d 691). The defendant's claim is without semblance of merit.

### (b)

The defendant, on October 26, 1965, the day on which the actual trial began, immediately before the presentation of evidence filed a motion to quash or dismiss the information on the ground that he had been denied the right to a speedy trial in violation of the sixth amendment to the constitution of the United States and what is now article first, § 8, of the Connecticut constitution.

The defendant, apparently by prearrangement, appeared at the Bethany Barracks of the Connecticut state police, accompanied by his own, privately selected and employed attorney, Alan Solomon, on November 14, 1964, the day after the issuance of the bench warrant. Then and there the defendant submitted to arrest under the bench warrant and on November 20, 1964, was presented before the Superior Court, entered a plea of not guilty and elected trial by jury. Attorney Solomon had been retained by the defendant prior to the arrest on November 14, 1964, formally entered his appearance for the defendant on November 20, 1964, and continued to represent him when he was presented for plea and throughout the trial. Nowhere does the defendant challenge the statement in the state's brief that during the entire period from the date of his arrest until the present time the defendant has been free on bond.

On the day of trial, Attorney Peter J. Zaccagnino, Jr., first filed his appearance for the defend-

ant. On the hearing on the motion to dismiss, Attorney Solomon was called as a witness for the defendant and testified that he did not recall that any specific trial date had been set at the time the defendant was arraigned, nor whether he himself had ever requested a continuance of the case, but that he remembered talking with someone in the office of the state's attorney about a trial date in June, 1965, and that he did not raise at any time the question of a speedy trial or claim a trial, up to and including the final continuance to October 26, 1965, when the defendant appeared in court for trial and when the motion to quash and dismiss the information for failure to provide a speedy trial was first filed. It should be noted that the defendant had been continuously represented by private counsel of his own choice from a date prior to his arrest. At no time was a request made by the defendant or his counsel for a speedy trial or even that a trial date be set.

Connecticut has always recognized the right of an accused to a speedy trial. But what is a speedy trial depends upon the circumstances. *State* v. *Hodge,* 153 Conn. 564, 569, 219 A.2d 367. Here, the defendant's attorney was so little concerned with getting the case to trial that he has no distinct recollection of talks with the office of the state's attorney about a trial date, and made no demand for any. Quite obviously, this course was good trial strategy since the defendant was not being prejudiced by delay. He was, and indeed still is, free on bond. He neither took the stand nor offered any witnesses or evidence at the trial proper, and thus it does not appear that he ran any risk of a witness becoming unavailable. He makes no claim of prejudice, nor does any prejudice appear, although an affirmative

showing of prejudice is not necessarily required of a defendant claiming undue delay in the bringing of his case to trial. *United States* v. *Lustman,* 258 F.2d 475, 477 (2d Cir.), cert. denied, 358 U.S. 880, 79 S. Ct. 118, 3 L. Ed. 2d 109. The defendant's acquiescence in the delay and his failure to make any demand for a trial are fatal to his claim, even though on its face a delay of about eleven months, unexplained, would seem an undue delay. *Klopfer* v. *North Carolina,* 386 U.S. 213, 218, 87 S. Ct. 988, 18 L. Ed. 2d 1; *United States* v. *Lustman,* supra, 478 (a case in accord with the prevailing rule); note, 57 A.L.R.2d 302, 326 § 10 (a). This ground of appeal is without merit.

(c)

On October 26, 1965, on the day of trial and immediately before the presentation of evidence, the defendant filed a motion to dismiss on the ground that the bench warrant under which, as previously pointed out, he, accompanied by Attorney Solomon, had submitted to arrest about eleven months before at the Bethany Barracks on November 14, 1964, was constitutionally invalid because it was issued on an information by the state's attorney without any supporting statement of probable cause. This was the first time the validity of the bench warrant had been attacked, or any suggestion or claim of its invalidity had been made.

It is true, as the defendant points out, that the case of *State* v. *Licari,* 153 Conn. 127, 133, 214 A.2d 900, was not decided until November 9, 1965, a few days after the actual trial of the instant case had terminated. The *Licari* case, however, amounted merely to a recognition and acceptance, and, indeed, an application, by Connecticut of settled law as

laid down by the Supreme Court of the United States in cases such as *Giordenello* v. *United States,* 357 U.S. 480, 78 S. Ct. 1245, 2 L. Ed. 2d 1503, decided in 1958, several years before the defendant was arrested on November 14, 1964.

The invalidity of the bench warrant was waived by the defendant's failure to raise the matter during the period of almost a year which elapsed between the time of arrest and the time of trial. Indeed, the defendant submitted to his arrest under the bench warrant accompanied by his own, privately employed attorney. There is nothing in the case of *State* v. *Vars,* 154 Conn. 255, 271, 224 A.2d 744, which followed *O'Connor* v. *Ohio,* 385 U.S. 92, 93, 87 S. Ct. 252, 17 L. Ed. 2d 189, which in any way justifies or condones the failure to raise this matter of jurisdiction of the person because of the invalidity of the bench warrant under the *Licari* rule. In the instant case, the claim was raised before the *Licari* decision was announced, which clearly indicates that the defendant had at least reasonable grounds to believe that the bench warrant, if properly attacked, would be held invalid as subsequently occurred in the *Licari* case.

The conduct of the defendant amounts to a submission to the court's jurisdiction of his person and a waiver of the defect in the bench warrant. *State* v. *Darwin,* 155 Conn. 124, 144, 230 A.2d 573. This ground of appeal is also without merit.

## IV

There is no error.

In this opinion the other judges concurred.