[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The legal dispute between the parties began with a complaint by the plaintiff against the defendant for unreimbursed medical services. The defendant denies owing any money and in fact, after the commencement of litigation, filed a counterclaim sounding in medical malpractice. The defendant is proceeding in a pro se capacity and feels very strongly that his present serious medical CT Page 9837 condition was the result of the improper and negligent treatment he received from the defendant and its agents.
After the counterclaim was filed, the plaintiff filed a motion to strike on the basis that a certificate of good faith was not filed as required by § 52-190(a) of the General Statutes, cf. Leconche v. Elligers, 215 Conn. 701, 711 (1990). The motion was granted and the next day the defendant filed a "Certificate of Reasonable Inquiry" in which he certified that he had "made reasonable inquiry as permitted by the circumstances to determine whether there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant.
He did not append the opinion of a health care provider but apparently relied upon his own review of medical records and his own knowledge of his medical condition. The court has examined the certificate which consists of various reports; they do not explicitly address the standard of care issue and do not appear to be made in response to any request to do so. Insofar as they mention the plaintiff or its agents at all, it is not clear from a reading of these reports that any actions of the plaintiff or its agents caused the defendant's present condition let alone that that condition was the result of the negligent or wrongful conduct of the plaintiff. In notes added to the reports by the defendant he states that certain test results were not given to him by the plaintiff and that he was not told that the first graft on one of his legs was "occluded" — all evidence of a coverup according to the defendant. But the defendant does not indicate how all this is related to the present condition he suffers from, what exactly is being covered up that might be causative of that condition or how in fact any of the allegedly concealed information is related to a viable medical malpractice claim. As to the test results that supposedly were not delivered to him, the defendant does not indicate why he concludes any test results exist.
After the defendant filed this certificate, the plaintiff filed a second motion to strike claiming the certificate was "invalid" in that none of the documents attached to it — opinions and letters from various doctors — could be categorized as written opinions of similar health care providers that there appeared to be medical negligence by the plaintiff. This court denied the second motion to strike and stated that the certificate was not part of the pleadings, so the motion was CT Page 9838 really nothing more than a so-called speaking demurrer. The court further felt that the motion to strike procedure mentioned inLeConche is not an appropriate vehicle to test a good faith certificate where one has actually been filed as opposed to a situation where no certificate has been filed at all.
In denying the motion, the court further noted that:
 "If after completion of discovery . . . it is determined the certificate was not filed in good faith or the matter was not `justiciable' it is then that the statute (§ 52-190(a)) talks in terms of sanctions. Hoe v. Corning, 9 C.S.C.R. 932, Zamstein v. Marvasti, CV9304571825 (Htfd/New Britain, 1993). The statute is not clear on the full scope of the sanctions and whether at that point a motion to dismiss or non-suit would be appropriate, although it does talk in terms of a matter not being `justiciable' — in any event a motion for summary judgment could be filed after discovery is completed."
Here discovery, or at least attempts at discovery, have been completed. The plaintiff represents it has turned over its full medical file to the defendant; the defendant himself has been deposed. The defendant is greatly dissatisfied with the responses to discovery he has received. Much of the dissatisfaction is based on a claim that the plaintiff's doctors and agents were the only people present at the time medical procedures which caused him harm were performed so that they should know what they did at that critical time and volunteer the information necessary to his claim. The defendant has not deposed any of the plaintiff's doctors or agents and has not retained any expert. At his deposition, he stated that he would be his own medical expert. The discovery requests made by the defendant in some respects did not comport with Practice Book requirements. They were sometimes vague and unduly burdensome because they were often nonspecific and not focused on any specific or intelligible claim of wrongdoing by the health care provider being sued. All of this of course is not surprising since the defendant chose to proceed without advice from an expert, has no apparent medical expertise, and seems to base his claim, so far at least, on some notion that since a bad result ensued after he went to the plaintiff, the bad result was not only caused by the plaintiff but was due to its negligence. Neither conclusion is logically required or in fact supported by any medical opinion submitted to the court. Because A follows B, it does not mean B caused A and it certainly does CT Page 9839 not mean that B was at fault in causing A.
Now the plaintiff has filed what it entitles a motion for summary judgment which is based on a claim that, in light of discovery that has been conducted, it is apparent that the certificate of inquiry was not filed in good faith "as the defendant has not received a written opinion of a similar health care provider that there appears to be medical negligence by the plaintiff." It is further claimed that "there are no other facts showing food faith" despite the fact that the plaintiff has cooperated fully in providing discovery. Thus, the certificate was not filed in good faith and no justiciable issue has been filed against the plaintiff. The invalidity of the defendant's certificate according to the plaintiff makes the entire malpractice claim legally insufficient "as it does not have a valid certificate of reasonable inquiry attached to it."
The plaintiff then asks that the court grant the motion for summary judgment or, alternatively, dismiss the claim and impose appropriate sanctions under § 52-190(a).
(1)
It is difficult to categorize the motion before the court as a motion for summary judgment. This is a medical malpractice claim where the defendant in his counterclaim asserts the plaintiff health care provider was negligent in performing certain procedures which caused him serious personal injury. Such a motion requires a trial court to determine whether an issue of fact exists but the court cannot try such an issue if it does exist. McColl v. Pataky, 160 Conn. 457, 459 (1971).
The moving party has the burden of showing the absence of any genuine issue as to all material facts which, under the principles of substantive law applicable to the case, entitle the party to judgment as a matter of law. The moving party must show that it is quite clear what the truth is excluding any real doubt as to the existence of any genuine issue of material fact; all of this paraphrases Moller Horton in Connecticut Practice in the commentary to P.B. § 384 (§ 17-49) and the language ofDougherty v. Graham, 161 Conn. 248, 250 (1971) and cases likeMcColl v. Pataky, supra.
Here, the plaintiff has not attempted to show the absence of any merit to the counterclaim by means of expert opinion, CT Page 9840 affidavits, documentation or reference to depositions. The plaintiff rather has merely sought to show that the certificate filed by the defendant pursuant to § 52a-190 was inadequate and did not meet the requirements of that statute.
(2)
The motion before the court is more properly characterized as a motion to dismiss based on the language of § 52-190(a). That statute, in somewhat confusing language, states that, after the completion of discovery, if the court determines the certificate:
 ". . . [W]as not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative, shall impose upon the person who signed such certificate a represented party or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fees."
The statute does not define "good faith." And although a written opinion by another health care provider attesting to medical negligence indicates "good faith may be shown to exist," the statute does not explicitly require such an opinion to establish "good faith." See Tautic v. Pattillo, 41 Conn. Sup. 169
(1988). In fact the statute goes on to say that in addition to such a written opinion by another health care provider, "the court may consider other factors with regard to the existence of good faith." Given this language, it would be inappropriate to read a mandatory requirement into the statute that such a written opinion has to be filed to show good faith. As a purely evidentiary proposition although expert testimony is required in most professional malpractice cases, if a medical condition is so obvious or common, a non-expert can testify especially if that person is the one suffering from the condition. State v. Orsini155 Conn. 367, 372 (1967); cf. Shegog v. Zabrecky,36 Conn. App. 737, 746-747 (1995); Tait LaPlante, Handbook of ConnecticutEvidence, § 7.126.5, p. 177, 2 Supplem. (1998) p. 105. Under these circumstances, how could it be said that the legislature intended or even could require that such a written opinion by another health care provider be obtained as a sine qua non to establish "good faith"? CT Page 9841
The concept of "good faith" seems to be related to a notion that the attorney or party filing the certificate, which turns out to be baseless, did so knowing the claims inside were false and was consciously aware that the investigation made preliminary to filing suit was inadequate. The statutory language picks up this theme when in the last sentence it says that when a court determines, after discovery, that the certificate was not filed by a lawyer in good faith and that no justiciable issue was presented, it "may also submit the matter to the appropriate authority for disciplinary review of the attorney, if the claimant's attorney submitted the certificate."[1]
Furthermore, the court in LeConche at 215 Conn., page 712 refers to the import of the language now being discussed. The court says:
 ". . . [A]lthough § 52-190(a) does not address the consequences of a failure to file a certificate, it does address the consequences of filing of what is later deemed to be a false certificate." (Emphasis added.)
Earlier, the court said "the general purpose of § 52-190(a) is to discourage the filing of baseless lawsuits against health care providers." Id. p. 710 (emphasis added.)
The court at pages 712-713 went on to say "assuming" an appropriate sanction for filing a "false certificate includes dismissal" such a remedy was not appropriate in the case before it but "the filing of a false certificate that represents that a reasonable pre-complaint inquiry was made, where in fact it was not, presents a more compelling scenario for dismissal."
All of this indicates to the court that at least where dismissal is the sought after sanction, lack of good faith means lack of candor, honesty and an intention to mislead. Dismissal cannot be based on mistake, error of analysis or simple neglect in preparing all aspects of a case. Certainly before a case is dismissed or a lawyer is referred for discipline something more is required than the last mentioned matters. Actual bad faith must be a prerequisite for dismissal if the ameliorative purpose of § 52-190(a) is not to be ignored and the statute is not to be turned into a mechanism that will have an unwarranted chilling effect on litigation and lawyers and pro se parties. CT Page 9842
Thus, although no justiciable claim was presented against the plaintiff health care provider by means of the certificate filed in this case, that does not end the inquiry as to the appropriateness of any sanctions under § 52-190(a) including the sanction of dismissal.
The court cannot find that this pro se litigant acted in bad faith, with the intention to mislead or with the knowledge that he was filing a "false" certificate and that his claim was baseless. The court will not take the extraordinary step of dismissing the action in the absence of reason to conclude that there was intentional bad faith. At least where dismissal is the sought after sanction, the purpose of § 52-190(a) was to provide a method in its sanctions procedure for dealing with sharp practice and intentional misrepresentation — in certain circumstances a dismissal, discretionary with the court, would be permissible. The statute, however, should not be used as a substitute, absent bad faith, for the summary judgment procedure set up by our Practice Book to test cases on their actual merits.
The plaintiff health care provider is not now precluded from filing a motion for summary judgment since the court has characterized this motion as one for dismissal under the sanction procedure set forth in § 52-190(a), but the court does deny the present motion.
Corradino, J.