(No. 13909.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. ELBERT R. ROBINSON, Plaintiff in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 7, 1921.*

1. CRIMINAL LAW—*what questions may be asked by defendant in examination of jurors.* In the examination of veniremen as to their competency to act as jurors, the defendant has the right to make any proper inquiry to enable him to exercise his right of challenge and to call in question rulings of the court in denial of that right.

2. SAME—*what are the qualifications of a juror.* A defendant has a constitutional right to a trial by a jury composed of persons having the qualifications prescribed by the statute, and it is his right that each juror shall be impartial, free from bias, prejudice, or an opinion implying a pre-judgment of the case which will not readily yield to contrary evidence, so that he can fairly and impartially try the case according to the law and the evidence and render a true verdict.

3. SAME—*what is not a proper question to ask of a prospective juror.* It is not proper examination of a prospective juror in a confidence game prosecution to ask what would be his verdict under an assumed state of facts, where the answer requires the juror to determine what the law includes in the offense charged.

4. SAME—*when sustaining objection to examination of juror is not prejudicial.* In the examination of a prospective juror in a prosecution for the confidence game it is not prejudicial error to sustain an objection to a question whether he would be prejudiced by the fact that the prosecuting witness had invested money with the defendant which had not been returned, where such investment was not, in fact, proved on the trial.

5. SAME—*crime of confidence game may be committed in form of a business transaction.* The statute relating to the confidence game does not apply to business transactions between parties dealing on an equal footing, but the fact that the offense assumes the form of a business transaction does not relieve from criminality one who thereby inspires confidence and fraudulently obtains money or property for his own use.

6. SAME—*when jury may be allowed to separate.* The jury may be allowed to separate during the trial of a criminal case except in capital cases or where some reason is shown for keeping the jurors together.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOSEPH H. FITCH, Judge, presiding.

CLANTON, CLANTON & JONES, ROBERT E. HOGAN, and P. J. O'SHEA, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiff in error, Elbert R. Robinson, was indicted in the criminal court of Cook county for obtaining from De-lilah M. Pelletier $380 by means of the confidence game and on a trial was convicted and sent to the penitentiary.

The first assignment of error requiring attention is that the court refused to permit counsel for the defendant to interrogate veniremen to ascertain their qualifications to act as jurors. The examination of the veniremen covers 135 pages, and the abstract does not contain the full examination of any of them but only a few questions to which objections were sustained, and it does not show that the entire examination failed to establish the competency of a particular juror or that he served on the jury. The defendant, however, had the right to make any proper inquiry to enable him to exercise his right of challenge and to call in question rulings of the court in denial of that right. *Lavin* v. *People,* 69 Ill. 303; *Donovan* v. *People,* 139 id. 412.

The first question contained in the abstract asked by counsel for the defendant and to which an objection was sustained is as follows: "The prosecuting witness may appear to be an elderly white lady who may have parted with various sums of money, and it may develop that this defendant received this money and that she had not received any part of the money back, and she entered into an obliga-

tion with this defendant by which she expected to receive
large returns for the money that she advanced, and if you
are satisfied that this defendant did receive this money, but
the criminal intent to defraud her by making representations
that are false, and he had knowledge of the falsity,—if the
State fails to show that this is the truth, would you by your
verdict find this defendant not guilty?"

The defendant had a constitutional right to a trial by a
jury composed of persons having the qualifications pre-
scribed by the statute. It was also his right that each juror
should be impartial, free from bias, prejudice or an opinion
implying a pre-judgment of the case which would not readily
yield to contrary evidence, so that he could fairly and im-
partially try the case according to law and the evidence and
a true verdict render. It was proper to inquire as to all
those things, and whether the person presented, if accepted
as a juror, would follow the law given to him by the court
and would not find the defendant guilty unless his guilt was
proved by evidence beyond a reasonable doubt. The essen-
tial elements of the crime and the facts which would war-
rant a verdict of guilty were questions of law for the court,
of which the jury were to be advised by instructions. Those
questions were not for the jury, and their function was to
determine the facts and apply the law as given to them by
the court. The purpose of the question was to obtain a
pledge from the juror what his verdict would be upon his
view of what the law included in the offense with which the
defendant was charged. It was not proper to ask him how
he would decide the case on the assumed state of facts, and
the court did not err in sustaining the objection.

The question asked of another juror was as follows:
"Should it develop during the progress of this trial that
certain moneys were invested by the prosecuting witness
with the defendant, and if in the investment of this money
by the prosecuting witness there was no taint or element of
fraud or swindling or criminality, and if it would further

develop that the money had not borne any returns, would that fact in itself prejudice you against the defendant?"

The question included the fact of an investment by the prosecuting witness, which would not be and was not proved, and while the court, in ruling on the objection, could not know that it might not be proved, the absence of the fact is material in determining whether any injury was done to the defendant by the ruling. The one of whom the question was asked had said that he had lost money by reason of investing money in companies issuing stocks and bonds, and being asked if he had lost money by a swindle or the confidence game said he did not recall any at the moment but he probably had many times. He was asked if the fact that the prosecuting witness was an elderly white lady and the defendant a colored man would make any difference to him if accepted as a juror, and he said it would not. He also was asked if the fact that he had loaned money out and lost it would influence him in a case in which the charge was for obtaining money from an elderly white lady, and he said it would not. Another venireman was asked practically the same question as to being influenced by the fact that the prosecuting witness had invested money with the defendant and never received any returns. The questions, including the fact of an investment, illustrate the impropriety of incorporating in them supposed facts which might not be, and in fact in this case were not, proved. The court in ruling on the objections said that if the State failed to prove the charge as alleged in the indictment the jury should find the defendant not guilty; that all that was necessary was to ascertain whether a juror would fairly and impartially try the case where the charge was for obtaining money by means and use of the confidence game, and that was all the defendant was entitled to know. The rulings of the court were not incorrect, even taking no account of the examination of the jurors and their answers not included in the abstract.

On November 30, 1897, the defendant received from the United States a patent, No. 594286, "For casting composite and other wheels." In 1898 he brought suit in the United States court against the Wells-French Company and the Chicago City Railway Company for infringement of the patent. That case was dismissed without prejudice and on appeal the judgment was affirmed. He started a new suit in 1903, in which he was defeated, and a writ of *certiorari* was asked for and denied. In 1904 he began an action at law against the American Car and Foundry Company, which had succeeded the Wells-French Company, in which he claimed $10,000,000 damages, and was defeated in the circuit court and the judgment was affirmed by the court of appeals in 1907. Under a decree against him on a creditor's bill the patent was sold by a master in chancery, the order confirming the sale being made December 11, 1904. He had entered suit against the American Car and Foundry Company praying for an injunction against using his patent, and that suit was finally decided against him in 1904 and the bill was dismissed. All the suits were decided against him. The defendant held public meetings three times a week, which were attended by white and colored people in considerable numbers, at which he informed his hearers of his patent and his suits and denounced the courts and judges and his attorneys, and said that everyone had been against him and he had been robbed of his patent and his rights. He asked for loans of money and received small amounts from anyone who would lend it to him, giving his notes for large sums in return for small loans, payable when the litigation was ended. Delilah M. Pelletier was a widow, who attended one of his meetings on August 18, 1916, when about one hundred, the majority of whom were white, were present. He told them he had a valid patent and that for $25 he would give $10,025 to those who would help him recover in the lawsuits, and that he could afford to give that amount to those who would help him recover his rights. He had

been a chiropodist and was called "Doctor" Robinson, and he opened his meetings with prayer. He said his patent had been stolen by the American Car and Foundry Company, and the lenders would get their money as soon as the suits were settled. At the first meeting Delilah M. Pelletier gave him $25 and he gave her this note:

"$10,025.                    CHICAGO, *Aug. 18, 1916.*

"When suit end after date, I promise to pay to the order of Delilah M. Pelletier ten thousand and twenty-five dollars when suit ends in the United States Supreme Court case 26618, against the American Car & Foundry Company, for value received. Due when suit ends.

"Pat. No. 594286.                    E. R. ROBINSON."

He afterward gave her a note for $2050 for a loan of $50, and one for $705 for $5. She testified that he said he was going to make a settlement with the American Car and Foundry Company for $10,000,000. Many other witnesses testified as to the defendant's meetings and his statements as to the value of his patent, the settlement of his suit against the American Car and Foundry Company for $10,-000,000, and that those who advanced money would all have their money by Christmas, 1917, or the first of January. Some witnesses testified that he claimed he had a judgment for $10,000,000 against the American Car and Foundry Company which was as good as gold, and that all of his notes would be paid out of the proceeds of that judgment.

The defendant was a witness and his testimony covers 191 pages of the record, and while his statements were contradictory and confusing, he repeated substantially what he had represented to those from whom he obtained money. He told of instituting the various suits, said that his patent was worth $100,000,000, and claimed that he expected to obtain $10,000,000 from the American Car and Foundry Company. He admitted that he had borrowed the money to carry on the litigation and support himself and his family. The evidence was that all the information that Delilah M. Pelletier had with regard to the patent and the litigation

came from the defendant's statements, and the evidence justified the conclusion that his representations were false and known to him to be false and that by means of his statements he secured her confidence and obtained her money. He necessarily knew he could not perform his promises since he had been unsuccessful in his numerous suits, and they were not made with any reasonable expectation that they would be carried out. The statute relating to the confidence game does not apply to business transactions between parties dealing on an equal footing, *(People* v. *Turpin,* 233 Ill. 452; *People* v. *Santow,* 293 id. 430;) but the fact that it assumes the form of a business transaction does not relieve from criminality one who thereby inspires confidence and obtains money or property. *Juretich* v. *People,* 223 Ill. 484.

It is contended that the defendant did not have a fair trial because of the improper and prejudicial remarks of the court at the trial. In the very long examination of the defendant he made speeches in which he wandered everywhere, and in spite of the determination of the suits against him and the sale of his patent by the master in chancery he still insisted that he expected to collect $10,000,000 from the American Car and Foundry Company and that the notes he had given would be paid out of the fund when collected. The court was very patient during the examination considering the nature of the testimony, but endeavored to confine the defendant, when objection was made, to the issues in the case. There was much testimony by attorneys who had been connected in one way or another with the litigation. One thing complained of is that the court made remarks showing hostility to the defendant. It is not possible within the limits of an opinion to specify all that was said by the court during the examination of the defendant and these attorneys, but it is true that the court talked a great deal and in some instances without much deliberation or care as to the language used, but there was nothing in the

remarks of the court that went to the merits of the case in any way. It is to be remembered, too, with reference to them, that it was clearly shown the defendant knew his suits were not pending, that they had been disposed of against him, and he so testified, and no other verdict could have been reached than that which was returned.

The court allowed the jury to separate during the trial. That is not error except in capital cases or where some reason is shown for keeping the jury together. *(Sutton* v. *People,* 145 Ill. 279; *People* v. *Stowers,* 254 id. 588; *People* v. *Foster,* 288 id. 371.) No cause was shown why the jury should be kept together, and allowing them to separate was not error.

The judgment is affirmed.          *Judgment affirmed.*

Mr. JUSTICE THOMPSON, dissenting.