ROSE SHERMAN, ADMINISTRATRIX (ESTATE OF ARTHUR
S. SHERMAN) *v.* WILLIAM M. RYAN &
SONS, INC., ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued April 2—decided May 1, 1940.

*Charles V. James,* with whom, on the brief, was *Arthur M. Brown,* for the appellants (defendants).

*George C. Morgan* and *Harry Schwartz,* for the appellee (plaintiff).

AVERY, J. This action was brought by the plaintiff as administratrix of the estate of Arthur Sherman to recover damages for his death on January 19, 1938, which, as the plaintiff claimed, was caused by the negligent operation of an automobile. The case was tried to the jury and a verdict returned in favor of the plaintiff from which the defendants have appealed, claiming errors in the charge of the court, in the proceedings occurring in the examination of the proposed jurymen upon the voir dire preceding the impaneling of the jury, and also in the refusal of the trial court to grant their motion to set aside the verdict.

On the trial the plaintiff offered evidence and claimed to have proved the following facts: At about 8.30 o'clock in the morning of January 19, 1938, the plaintiff's intestate, Arthur Sherman, a boy nine years of age, was proceeding northerly on Summit Street in Norwich on his way to school. The day was very cold and the street was covered with snow which had been plowed from the center, forming a traveled space about sixteen feet wide, which had been worn smooth and slippery by traffic. At the place in question, Summit Street runs north and south with a rising grade to the north, and the decedent was walking upon the westerly side of the traveled way, dragging his sled, having a cap pulled over his face. Two other children

were preceding him, each dragging a sled. An automobile, traveling southerly, owned by the named defendant and driven by its agent, approached the point where the three boys were walking. The day was clear and the vision of the operator was unobstructed for many hundred feet. As the automobile approached, the operator was first traveling on the westerly side of the street, he then veered off to the middle, traveling at a rate of about twenty to twenty-five miles per hour until within a distance of two hundred to two hundred and fifty feet northerly of the first of the three boys, when he continued to veer the car toward the easterly side of the traveled portion of the street and proceeded, continuing to veer to his left without slackening speed and on his left side of the highway, until about opposite the plaintiff's decedent, when one of the boys shouted, "Look out." The decedent then either walked rapidly or ran toward the middle of the highway, and, because of the failure of the operator of the automobile either to blow his horn or stop, the decedent was struck with the right side of the automobile, fracturing his skull and causing his death. At the moment of impact, the left front and rear wheels of the automobile were in the packed snow on the easterly side of the traveled way. The facts claimed to have been proved by the defendants were substantially the same as those claimed by the plaintiff, except that the defendants claimed to have proved that when the automobile came within a distance of two hundred or two hundred and fifty feet northerly of the first of the boys the operator blew the horn and slackened speed; and when the front end of the automobile was at a distance of about ten feet from the decedent the latter suddenly ran or walked rapidly from the westerly side of the highway, where he had been previously walking, and proceeded in a northeasterly direction

toward the path of the automobile and against its right-hand side, so that the left side of his head came into collision with the door on the right side of the automobile.

In its charge to the jury, the trial court gave them elaborate instructions in regard to the doctrine of the last clear chance and left it to the jury to determine whether the doctrine applied to the facts in evidence. There was nothing in the claims of the parties as to the facts proved which laid any foundation for the application of this doctrine. As far as the automobile was concerned, the deceased was in a position of safety while walking on the west side of the roadway. He left that position of safety and started across the road toward the path of the approaching automobile. He did not come into a position of peril from the automobile until substantially the instant when he was struck. "Where both the pedestrian and the driver of the automobile proceed in their course to the moment of collision and the former does not come into the position of peril from the automobile until substantially the instant he is hit, the doctrine can have no place in the case." *Correnti* v. *Catino,* 115 Conn. 213, 225, 160 Atl. 892; *Puza* v. *Hamway,* 123 Conn. 205, 212, 193 Atl. 776; *Rix* v. *Stone,* 115 Conn. 658, 663, 163 Atl. 258; *Middletown Trust Co.* v. *Armour & Co.,* 122 Conn. 615, 618, 191 Atl. 532; *Beck* v. *Sosnowitz,* 125 Conn. 553, 558, 7 Atl. (2d) 389. To give an instruction which would permit the plaintiff to recover under the doctrine of the last clear chance was too favorable to her and constituted reversible error. *Fine* v. *Connecticut Co.,* 92 Conn. 626, 630, 103 Atl. 901; *Lanfare* v. *Putnam,* 115 Conn. 267, 269, 161 Atl. 242; *Strong* v. *Carrier,* 116 Conn. 262, 265, 164 Atl. 501.

In the examination of the prospective jurymen on the voir dire, the counsel for the plaintiff, over the

defendant's objection, was permitted to make to the prospective jurymen an inquiry, in substance, whether the fact that the boy, as he was walking along the street and when he was injured, had a cap pulled down over his face would prejudice the jurymen in the trial of the case. The extent to which parties should be allowed to go in examining jurors as to their qualifications is a matter largely resting in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and where harmful prejudice appears to have been caused thereby. *State* v. *McGee,* 80 Conn. 614, 619, 69 Atl. 1059; *State* v. *Lee,* 69 Conn. 186, 195, 37 Atl. 75; 35 C. J. 389. However, as a new trial must be had in any event in this case, we think it proper to say that hypothetical questions intended to elicit from a juryman in advance what his decision will be under a certain state of the evidence or upon a certain state of facts should not be permitted by the trial court. A party has no right to assume the facts of a case about to go on trial, and ascertain a juror's opinion in advance. *People* v. *Robinson,* 299 Ill. 617, 619, 132 N. E. 803, 804; *Commonwealth* v. *Van Horn,* 188 Pa. St. 143, 165, 41 Atl 469, 472; *State* v. *Bokien,* 14 Wash. 403, 410, 44 Pac. 889, 891; *Dicks* v. *State,* 83 Fla. 717, 718, 93 So. 137, 138; *Woollen* v. *Wire,* 110 Ind. 251, 11 N. E. 236, 237; 16 R. C. L. 281, § 97. General Statutes, § 5559, permits an inquiry as to the qualifications of a proposed juryman, his interest in the subject matter of the action or his relations with the parties. It does not authorize an inquiry as to the effect of an assumed state of facts upon the attitude or decision of a juror. *State* v. *Cross,* 72 Conn. 722, 730, 46 Atl. 148.

In the instant case the effect of the question was to single out and place undue emphasis upon one fact

relevant to the issue of the boy's contributory negligence when that fact was not such as would tend to arouse any hostile emotion in the mind of the jurors. If the plaintiff in this case were permitted as of right to do this, there is no limit to which counsel might not go in singling out particular facts as a basis of such inquiries. The trial court might well have exercised its discretion to exclude the question. As a new trial must be ordered because of error in the charge, it is unnecessary to discuss the action of the trial court in refusing to set aside the verdict.

There is error and a new trial is ordered.

In this opinion the other judges concurred.