******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JAMES K.*
## (SC 20693)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Ecker and Alexander, Js.

*Syllabus*

Convicted of the crime of risk of injury to a child but acquitted of two
counts of first degree sexual assault in connection with the defendant's
alleged sexual abuse of his daughter, V, the defendant appealed to the
Appellate Court, which affirmed the judgment of conviction. From about
the age of six until twelve, V resided with the defendant, and, during
the earlier part of that time period, V also resided with her half sister,
H. During that time, the defendant allegedly used physical force to
discipline V and H on numerous occasions. Also during that time, there
was an incident in V's bedroom in which the defendant had contact
with V's intimate parts. Subsequently, the defendant was arrested on
unrelated charges, and V was placed in the custody of her maternal
grandmother, B. Thereafter, the Department of Children and Families
investigated allegations that the defendant had physically abused V, as
well as B's complaint that the defendant had acted inappropriately
toward V by kissing her on the lips. A forensic interview of V was con-
ducted, which was video-recorded. In the course of that interview, V
provided details of the incident involving the defendant's contact with
her intimate parts. During jury selection, the prosecutor indicated that
she would seek to introduce at the defendant's trial one or more photo-
graphs showing the defendant kissing H on the lips. Defense counsel
objected and argued that it was part of her obligation in selecting a fair
and impartial jury to ask prospective jurors to express their feelings
about whether it was appropriate for parents to kiss their children on the
lips. The trial court precluded defense counsel from asking prospective
jurors about a parent's kissing a child on the lips because it was too
specific to the facts of the case and limited defense counsel to asking
prospective jurors about the ways in which parents can show physical
affection to their children. Thereafter, the court ruled that the photo-
graph or photographs showing the defendant kissing H were inadmissi-
ble because they were prejudicial to the defendant. During the remainder
of jury selection, defense counsel did not question prospective jurors
about their opinions with respect to displays of affection between par-
ents and their children. In addition, the defendant filed a motion in limine
before trial, seeking to preclude the admission of the video recording
of V's forensic interview. The defendant claimed that the video had
limited probative value and was unduly prejudicial, insofar as it consti-
tuted cumulative evidence of the facts to be elicited during V's trial
testimony. The defendant also claimed that the video would improperly
bolster V's testimony. After V testified at trial, and after hearing argu-
ments from the parties, the trial court admitted the video-recorded
interview into evidence under the medical diagnosis and treatment
exception to the hearsay rule. In affirming the judgment of conviction
of risk of injury to a child, the Appellate Court concluded that the
trial court had not abused its discretion in restricting defense counsel's
examination of prospective jurors during voir dire, that the defendant
had failed to demonstrate that the trial court's ruling resulted in harmful
prejudice, and that the trial court had not abused its discretion in admit-
ting the video recording of the forensic interview. The defendant, on
the granting of certification, appealed to this court. *Held*:

1. The defendant could not prevail on his claim that the trial court had
   improperly limited defense counsel's questioning of prospective jurors
   and that the limitation had resulted in harmful prejudice:

   This court recognized that there was an inconsistency in the case law
   regarding when the trial court's exercise of discretion in restricting voir
   dire will result in reversible error, as the case law had sometimes required
   that a party prove both an abuse of discretion and harmful prejudice,
   and, at other times, had required that a party prove abuse of discretion

or harmful prejudice.

After reviewing its prior case law, the case law of other jurisdictions, and similar standards that it had applied when it was called on to evaluate a trial court's exercise of discretion, this court clarified that a trial court has wide discretion in conducting voir dire and that the exercise of that discretion will not constitute reversible error unless the court has clearly abused its discretion and harmful prejudice has resulted.

In the present case, even if the trial court had clearly abused its discretion in precluding defense counsel from asking prospective jurors about their views on a parent's act of kissing a child on the lips, the defendant did not establish that harmful prejudice resulted from that abuse of discretion.

Defense counsel was permitted to ask prospective jurors about whether they considered different forms of parental affection appropriate or inappropriate and was precluded only from asking questions specifically about their views concerning kissing a child on the lips, and the facts that defense counsel asked only five of the prospective jurors about their views on parental affection, availed herself of limited follow-up with respect to that line of questioning, and stopped asking prospective jurors about parental affection after the trial court ruled that the prosecutor could not introduce into evidence the photograph or photographs showing the defendant kissing H suggested that defense counsel did not consider the issue of parental affection of great importance once the prosecutor was precluded from introducing the photograph or photographs.

Moreover, evidence regarding the defendant's conduct of kissing V on the lips was not a prominent part of the state's case, as that conduct did not form the basis for any of the offenses with which the defendant was charged, and the prosecutor did not rely on that conduct during her closing argument.

Furthermore, the jury's split verdict, whereby it found the defendant guilty of risk of injury to a child but not guilty of the sexual assault charges, also weighed against any claim that the defense was hampered in its efforts to select an impartial jury by virtue of the trial court's limitation on defense counsel's questioning during voir dire.

2. The Appellate Court correctly concluded that the trial court had not abused its discretion in admitting the video recording of V's forensic interview:

There was no merit to the defendant's claim that the trial court had not engaged in the required balancing of the probative value of the evidence against its prejudicial effect because, although the court did not conduct an on-the-record balancing of the evidence, it was not required to do so, and a review of the entire record, particularly the parties' arguments before the trial court, revealed that the court had considered the probative value of the evidence and its prejudicial effect before making its ruling.

Moreover, the video recording of the forensic interview was probative of the particular details underlying the defendant's sexual assault charges, and, although the defendant claimed that the video recording had limited probative value because V had testified to the same facts at trial, the defendant conceded, and a review of the evidence demonstrated, that there were details revealed during the forensic interview that were not contained in V's trial testimony.

Furthermore, the admission of the video recording of the forensic interview was not unduly prejudicial, as the interview contained new or inconsistent evidence regarding the crimes with which the defendant was charged.

Nevertheless, this court acknowledged that the interview also contained a large amount of consistent evidence and cautioned that, when an alleged sexual assault victim's prior consistent statements are admitted in the absence of an applicable exception to the general rule precluding the admission of such statements, there is a danger that the evidence will be improperly used to enhance the credibility of the victim.

This court emphasized that defendants can request and trial courts should consider redacting portions of video recordings of forensic interviews

to limit their prejudicial effect.

In the present case, the trial court could have addressed, by way of redaction, many of the issues that the defendant raised on appeal with respect to why the video recording of V's forensic interview was more prejudicial than probative, but, at trial, the defense challenged the admission of the video in its entirety rather than seeking redaction.

Argued March 23—officially released August 29, 2023

*Procedural History*

Substitute information charging the defendant with two counts of the crime of sexual assault in the first degree and one count of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *B. Fischer, J.*; thereafter, the court denied the defendant's motion to preclude certain evidence; verdict and judgment of guilty of risk of injury to a child, from which the defendant appealed to the Appellate Court, *Prescott, Moll* and *Suarez, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Pamela S. Nagy*, supervisory assistant public defender, for the appellant (defendant).

*Melissa E. Patterson*, senior assistant state's attorney, with whom were *Sarah Hanna*, former senior assistant state's attorney, and, on the brief, *John P. Doyle*, state's attorney, *Maxine Wilensky*, former senior assistant state's attorney, and *Karen Roberg*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, James K., appeals from the judgment of the Appellate Court, affirming the judgment of conviction, rendered following a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal to this court, the defendant asserts that the Appellate Court incorrectly concluded that the trial court did not (1) improperly limit defense counsel's questions to potential jurors and that this limitation did not result in harmful prejudice, and (2) improperly admit into evidence a video recording of the forensic interview of the victim regarding the crimes at issue. We disagree and conclude that, even if the trial court improperly limited defense counsel's questions to potential jurors, any error did not result in harmful prejudice, and that the trial court did not abuse its discretion by admitting the video recording of the forensic interview into evidence. Accordingly, we affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts, which the jury reasonably could have found. "The defendant is the victim's biological father. In 2010, when the victim was approximately six years old, the defendant obtained full physical custody of the victim as a consequence of drug abuse and mental health issues affecting the victim's biological mother. Initially, the victim resided with the defendant; her stepmother, M; her half sister, H; and other relatives. The victim and H are close in age, shared a close bond, and attended the same school. Later, the defendant, M, H, and the victim moved to a different residence.

"On numerous occasions, the defendant used physical force to discipline the victim and H. The defendant often struck the victim on her buttocks, back, and arms with his bare hands or physical objects such as a belt or an extension cord. Occasionally, if the use of force resulted in visible injuries to the victim, the defendant would make the victim conceal her bruises with clothing, or he would keep her home from school.

"One night in 2011 or 2012, when the victim was seven or eight years of age, the defendant verbally and physically assaulted M in the victim's presence, following which M and H left the residence. The victim, preparing to take a shower, went into her bedroom, undressed, and wrapped herself in a towel. The defendant entered the bedroom and told the victim that he had received a telephone call from her teacher and was upset to have learned that the victim had misbehaved in class. After the victim and the defendant discussed this matter, the defendant instructed the victim to remove her towel and bend over a nearby bed. The victim, expecting to be struck by the defendant as a form of discipline, complied with the defendant's instruction.

"The victim positioned herself on all fours on the

bed. As the defendant stood behind her, at the edge of the bed, he touched the victim's anus and her vagina with his penis. Penetration did not occur.[2] As the incident progressed, the defendant pushed the victim down so that her head and chest were on the bed. When the victim told the defendant to stop touching her, he responded by telling her to be quiet. Despite the fact that the defendant's hands were on the victim's waist, he stated that he was using 'his thumb.' After a few minutes, the defendant stopped what he was doing, told the victim to remain bent over until he left her bedroom, and walked into another room. The victim was confused by the defendant's conduct and knew that it was 'bad . . . .' She proceeded to use the shower. After the victim showered, the defendant told her that they were going out to get pizza for dinner, and he stated that 'what happened in the house stays in the house.' The victim understood this to mean that the defendant did not want her to discuss what he had done to her in the bedroom, and she believed that, if she told anyone about it, it would either happen again or the defendant would punish her by beating her.

"The defendant and M later separated, and the victim thereafter resided with the defendant and his new girl-friend. The victim resided there until December, 2015, when the defendant was arrested on charges unrelated to the present case. The victim was placed in the custody of her maternal grandmother, B. Thereafter, the Department of Children and Families (department) investigated allegations that the victim had suffered physical abuse caused by the defendant. The department also investigated concerns expressed by B that the defendant had acted inappropriately toward the victim because he had a habit of kissing the victim on the lips. Ultimately, the victim disclosed to a department social worker that the defendant had done something that made her uncomfortable and that he 'tried to say it was his finger . . . .' During a forensic interview at Yale New Haven Hospital's child sexual abuse clinic in 2016, the victim provided details of the incident involving the defendant's contact with her intimate parts in her bedroom." (Footnote in original.) *State* v. *James K.*, 209 Conn. App. 441, 444–47, 267 A.3d 858 (2021).

On appeal, the Appellate Court affirmed the judgment of conviction. Id., 482. The Appellate Court concluded that the trial court had not abused its discretion by restricting defense counsel's examination of prospective jurors during voir dire and that the defendant had failed to demonstrate that the trial court's ruling resulted in harmful prejudice. See id., 447–59. The Appellate Court also concluded that the trial court had not abused its discretion in admitting the video recording of the victim's forensic interview into evidence. See id., 459–73.

Thereafter, the defendant filed a petition for certifica-

tion to appeal to this court, which we granted, limited to the following issues: (1) "Did the trial court improperly preclude defense counsel from asking prospective jurors to express their opinions about the practice of a parent kissing his or her child on the lips, and, if the answer to that question is 'yes' and the error is subject to harmless error review, was that error harmful?" And (2) "[d]id the trial court err in not excluding a video-recorded forensic interview with the [victim] when the [victim] gave clear and cogent testimony at trial and the prejudicial effect of the video-recorded interview greatly outweighed its marginal probative value?" *State* v. *James K.*, 342 Conn. 904, 270 A.3d 692 (2022).[3]

I

Both in this court and in the Appellate Court, the state identified an inconsistency in our case law regarding when the trial court's exercise of discretion in restricting voir dire will result in reversible error. Therefore, before addressing the defendant's claim related to the improper limitation on voir dire questioning, to adequately address whether reversal is required, we take this opportunity to clarify the appropriate standard for evaluating such claims.

It is well established and undisputed that "[t]he [trial] court has wide discretion in conducting the voir dire . . . ." (Citations omitted.) *State* v. *Dahlgren*, 200 Conn. 586, 601, 512 A.2d 906 (1986). At times, this court has stated that a party must prove both an abuse of discretion *and* harmful prejudice resulting therefrom to demonstrate reversible error. See, e.g., *State* v. *Edwards*, 201 Conn. 125, 159, 513 A.2d 669 (1986) (explaining that "[t]he extent to which parties may go in [the examination of prospective jurors during voir dire] rests largely in the discretion of the [trial] court, and the exercise of that discretion will not constitute reversible error unless the discretion has been clearly abused *and* one of the parties has been prejudiced thereby" (emphasis added; internal quotation marks omitted)).

However, at other times, this court and the Appellate Court have stated that "the exercise of that discretion will not constitute reversible error unless it has clearly been abused *or* harmful prejudice appears to have resulted." (Emphasis added; internal quotation marks omitted.) *State* v. *Skipper*, 228 Conn. 610, 625, 637 A.2d 1101 (1994); accord *State* v. *Mota-Royaceli*, 186 Conn. App. 735, 739, 200 A.3d 1187 (2018), cert. denied, 330 Conn. 960, 199 A.3d 20 (2019). Thus, we have been less than clear about whether the test to determine reversible error due to a restriction on voir dire is conjunctive or disjunctive.

Tracing this issue back to its origins reveals that the standard initially had required both a clear abuse of discretion and harmful prejudice. More than one century ago, in *State* v. *Lee*, 69 Conn. 186, 37 A. 75 (1897),

this court held that a defendant is "not entitled, as a matter of strict right, to have the [prospective] jurors sworn as requested," which is "a matter [that] is left largely to the discretion of the trial court." Id., 194–95. In *Lee*, this court concluded that, in that case, the trial court's "discretion appear[ed] to have been properly exercised, and the record fail[ed] to show how the defendant was in any way harmed by the refusal of which he complains." Id., 195. We later maintained in *Sherman* v. *William M. Ryan & Sons, Inc.*, 126 Conn. 574, 13 A.2d 134 (1940), that "[t]he extent to which parties should be allowed to go in examining [prospective] jurors as to their qualifications is a matter largely resting in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and [when] harmful prejudice appears to have been caused thereby." Id., 578. And, then, in *State* v. *Higgs*, 143 Conn. 138, 120 A.2d 152 (1956), we reiterated that "the extent to which parties may go in such an examination rests largely in the discretion of the [trial] court, and the exercise of that discretion will not constitute reversible error unless the discretion has been clearly abused and one of the parties has been prejudiced thereby." Id., 142.

It appears that the main source of the confusion arose in 1969, in *Childs* v. *Blesso*, 158 Conn. 389, 260 A.2d 582 (1969), when this court replaced the "and" with "or" and stated the standard as "[t]here is no reversible error in the [trial] court's exercise of its discretion unless it has been clearly abused *or* one of the parties has been prejudiced."[4] (Emphasis added.) Id., 394. In *Childs*, there was no discussion or explanation for why the court deviated from the conjunctive standard common to the case law of this court. Nevertheless, that version of the standard has been repeated, though not always consistently.

Even though the more recent iteration of the standard in the disjunctive did not explicitly require proof of abuse of discretion and harm, a review of our cases citing that standard demonstrates that this court typically engages in an analysis of the harmful prejudice caused by any abuse of the trial court's discretion in order to determine if the error is reversible. See, e.g., *State* v. *Fritz*, 204 Conn. 156, 162, 527 A.2d 1157 (1987) (declining to adopt per se rule that limiting defense counsel's questioning of prospective juror about testimony of police officer was reversible error and engaging in harmless error analysis), overruled on other grounds by *State* v. *Crawford*, 257 Conn. 769, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002).

Requiring a defendant to prove both that the trial court clearly abused its discretion and that harmful prejudice resulted is consistent with the treatment of these types of claims in other jurisdictions. See, e.g.,

*State* v. *Lovette*, 225 N.C. App. 456, 463, 737 S.E.2d 432 (2013) ("The regulation of the manner and the extent of the inquiry rests largely in the discretion of the trial court. The exercise of such discretion constitutes reversible error only upon a showing by the defendant of harmful prejudice and clear abuse of discretion by the trial court." (Internal quotation marks omitted.)), quoting *State* v. *Jones*, 347 N.C. 193, 203, 491 S.E.2d 641 (1997); see also, e.g., *Wright* v. *State*, 374 A.2d 824, 829 (Del. 1977) ("[a]ny limitation on the voir dire imposed by the [t]rial [c]ourt will not be disturbed absent a clear showing of abuse of discretion to the prejudice of the defendant"); *Tate* v. *United States*, 610 A.2d 237, 239 (D.C. 1992) ("the trial court has broad discretion in the conduct of jury voir dire . . . and its rulings will be affirmed on appeal unless the record reveals an abuse of discretion resulting from an erroneous ruling coupled with substantial prejudice to the defendant" (citation omitted)).

The use of the conjunctive test is more appropriate in this type of case. The two factors at issue in the test—clear abuse of discretion and harmful prejudice—are both necessary to require reversible error. A clear abuse of discretion that does not result in harmful prejudice would not require reversal. Moreover, the conjunctive test is also more consistent with similar tests we apply when we are called on to evaluate a trial court's exercise of discretion, such as the test for evidentiary improprieties, which requires that the defendant prove both an abuse of discretion and harmful error. See, e.g., *State* v. *Qayyum*, 344 Conn. 302, 316, 279 A.3d 172 (2022) ("[i]n order to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse" (internal quotation marks omitted)). Accordingly, we clarify that a trial court has wide discretion in conducting a voir dire and that the exercise of that discretion will not constitute reversible error unless it has clearly been abused and harmful prejudice appears to have resulted.

The following additional facts and procedural history are relevant to this claim. "On October 16, 2018, the second day of jury selection, defense counsel alerted the [trial] court to the fact that the state was in possession of photographs depicting the defendant kissing H on the lips. Defense counsel expressed her belief that the state intended to introduce these photographs in evidence over [her] objection. The court, *B. Fischer*, *J.*, added that, during the victim's forensic interview, the victim indicated that the defendant had kissed her on the lips. In light of the possibility that evidence of the defendant's habit of kissing his daughters on the lips was likely to be before the jury, defense counsel opined that some potential jurors would have a very strong reaction to such evidence. She argued that it was part of her obligation in selecting a fair and impar-

tial jury to ask prospective jurors to express their feelings about that behavior. Defense counsel provided the court with the type of inquiry she believed was appropriate, stating: 'I guess I would ask a venireperson, do they have opinions about how parents might show affection to their children and . . . might they have opinions about whether parents kiss their children . . . as part of showing affection, and might they also have any strong opinions one way or another about whether . . . it's okay for parents to kiss their children on the lips, in terms of . . . is that a common thing in their mind in terms of showing affection?' The prosecutor objected to any inquiry concerning kissing or 'physically showing affections between a parent and child.'

"The court responded, '[t]he kissing is too fact specific. You know, prospective jurors may not be questioned regarding their predisposition to decide issues with respect to evidence that may be offered at trial or with the intent to condition them to prejudge issues that will affect the outcome of the trial. I have no issues with a question along the following lines . . . . "Do you understand that parents can have different methods of showing physical affection to their children" or a question like that, but to specifically ask about kissing on the lips is too fact specific.' Defense counsel asked whether a question about kissing on the lips could be asked in the event that a venireperson raised the issue. The court stated that such a follow-up inquiry was not permissible because it would be 'too fact specific.' The court clarified that defense counsel could ask questions about a parent engaging in 'different methods of showing physical affection to [his or her] child' but that defense counsel could not ask about kissing on the lips. Defense counsel stated that she disagreed with the court's ruling but that she would abide by it." *State* v. *James K.*, supra, 209 Conn. App. 447–48.

On the third day of jury selection, after hearing arguments from the parties, "[t]he [trial] court excluded the photograph [depicting the defendant kissing H on the lips] from evidence. The court stated: 'I'm not going to allow it in. It is a [photograph] of [H], who is not the [alleged victim] here. Clearly, as I understand it, there will be evidence from the [victim] that the defendant did kiss her on the mouth . . . but we'll wait to hear that testimony. But this is separate. This is not the [victim's photograph], it's [H]. The court finds it's too inflammatory, too prejudicial to the defendant.' During the remaining three days of jury selection that followed the court's ruling, defense counsel did not question prospective jurors about their opinions, if any, with respect to displays of affection between parents and their children.

"Prior to the victim's testimony at trial, defense counsel expressly agreed that testimony about the fact that the defendant had kissed the victim on the lips was

admissible. The victim subsequently testified that the defendant had a habit of kissing her on the lips, that this behavior 'bother[ed]' her, and that she asked the defendant to kiss her on the cheek instead. The victim testified, however, that the defendant continued to kiss her on the lips. Kelly Adams, a department investigator, testified at trial that, when she spoke with B, [B] stated that 'she believed something happened because [the defendant] would kiss [the victim on] the mouth and [the victim] didn't like it, she said it made her feel very uncomfortable . . . .' Adams further testified that B's statements led her to question the victim as to whether anyone had done something that made her feel uncomfortable, and that this inquiry resulted in the victim's initial disclosure of [the defendant's] sexual abuse [of her]. Adams testified that the defendant mentioned to her that he was aware of the fact that others had told her that he had kissed the victim on the lips but that he had not behaved inappropriately. During [her] closing argument, the [prosecutor] did not rely on evidence related to the defendant's habit of kissing the victim on the lips." (Footnote omitted.) Id., 451–52.

Even if we assume, without deciding, that the trial court clearly abused its discretion in precluding defense counsel from asking the prospective jurors to express their feelings about parents kissing their children on the lips, the defendant has not demonstrated that any such error caused harmful prejudice.

First, in assessing whether the defendant was harmed by the limitation on questioning, we must "begin our analysis by determining the scope of the trial court's ruling, i.e., what specific question or questions actually were prohibited." *State* v. *Lugo*, 266 Conn. 674, 684, 835 A.2d 451 (2003). In the present case, the limitation on defense counsel's ability to question the prospective jurors was narrow. Although the trial court prohibited defense counsel from asking prospective jurors about their views regarding parents kissing a child on the lips, the court clarified that defense counsel could ask about their views on different forms of parental affection.[5] Defense counsel still could inquire into the types of affection that the prospective jurors considered to be appropriate and those that they considered to be inappropriate. See *State* v. *James K.*, supra, 209 Conn. App. 448–51. The trial court gave defense counsel the opportunity to ask follow-up questions in this area and to explore each prospective juror's views regarding parental affection, only precluding questions specifically about kissing a child on the lips. See *State* v. *Lugo*, supra, 687, 690 (concluding that trial court's limitation on questioning during voir dire was not reversible error because defense counsel "was afforded ample opportunity to uncover each prospective juror's predisposition toward gangs" in general, even though trial court had prohibited questions about "Latin Kings" gang).

Second, the manner in which defense counsel questioned the prospective jurors demonstrates that the trial court's limitation on questioning did not cause the defendant harmful prejudice. Although defense counsel asked some questions regarding prospective jurors' views on parental affection, counsel only availed herself of limited follow-up on this line of questioning and only asked five of the prospective jurors about their views on parental affection. After the trial court precluded the state from introducing into evidence the photograph of the defendant kissing H, defense counsel stopped asking prospective jurors about parental affection. Therefore, because the trial court only prohibited defense counsel from asking about "kissing on the lips" and allowed counsel to ask questions about parental affection, the fact that defense counsel did not avail herself of this opportunity not only weighs against the defendant's claim of prejudice caused by the limitation imposed by the court, but also reveals that even defense counsel did not consider the issue of parental affection of great importance once the state was precluded from introducing the photograph. See *State* v. *Lugo*, supra, 266 Conn. 687 (noting that, although defense counsel did not ask questions about gangs in general, counsel was not prohibited from doing so by trial court's limitation).

Third, evidence regarding the defendant kissing the victim on the lips was not a prominent part of the state's case. The jury heard evidence that the defendant had kissed the victim on the lips and that the victim had objected to that kissing. The jury also heard evidence that B was concerned about the defendant's practice of kissing the victim on the lips, that she reported that concern to Adams, and that Adams began investigating whether the victim had been sexually abused. The defendant's habit of kissing the victim on the lips did not form the basis for any of the offenses with which he was charged. Also, the prosecutor did not rely on the evidence regarding kissing the victim on the lips during her closing argument.

Moreover, as the Appellate Court recognized, in assessing the impact of the evidence regarding kissing on the lips, it is important to remember that the jury, in this case, returned a split verdict. See *State* v. *James K.*, supra, 209 Conn. App. 458–59. Indeed, although the jury found the defendant guilty of risk of injury to a child, the jury found him not guilty of the sexual assault charges. See footnotes 1 and 2 of this opinion. The jury's ability to assess each charge separately and to find the defendant not guilty of some of the charges weighs against the defendant's claim that the trial court's limitation on defense counsel's questioning during voir dire caused harmful prejudice by impacting the defendant's ability to choose an impartial jury. See, e.g., *State* v. *Dahlgren*, supra, 200 Conn. 597–98, 603 (relying on fact that defendants were each acquitted of some

counts to conclude that trial court's limitation on questioning of potential jurors did not cause harmful prejudice).

Accordingly, even if we assume that the trial court clearly abused its discretion in precluding defense counsel from asking potential jurors about their views on parents kissing their children on their lips, the defendant has not established that harmful prejudice resulted from that limitation.

II

The defendant next claims that the Appellate Court incorrectly concluded that the trial court had not abused its discretion in admitting the video recording of the victim's forensic interview because its probative value was outweighed by its prejudicial effect. Specifically, the defendant asserts that, contrary to the conclusion of the Appellate Court, the video recording was not probative because the victim's testimony had already established the elements of the crimes with which he was charged. See *State* v. *James K.*, supra, 209 Conn. App. 466–68. The defendant further claims that the admission of the video recording constituted harmful error.[6] We disagree.

The following facts, as set forth in the Appellate Court's opinion, are relevant to this claim. "Prior to trial, the state filed a notice of its intent to offer into evidence a video recording of the victim's forensic interview that occurred on March 9, 2016, and that was conducted by Monica Vidro Madigan, a clinical social worker employed by . . . Yale New Haven Hospital's child sexual abuse clinic. Later, the defendant filed a motion in limine to preclude the admission of the video. The defendant assumed for purposes of his motion that the victim would testify at trial and would be able to recall and narrate the details of her sexual abuse allegations against the defendant. The defendant expressly stated that he did not object to the admissibility of the video on hearsay grounds. Instead, the defendant raised what he characterized as an objection related to 'relevance and bolstering . . . .' The defendant argued that the video had limited probative value and was unduly prejudicial to him. In arguing that it was unduly prejudicial, [the defense] argued that it was unnecessary and cumulative evidence of the facts to be elicited during the victim's trial testimony, and it would improperly bolster the victim's testimony.

"Following the victim's trial testimony, on October 24, 2018, the [trial] court heard arguments on the motion. Defense counsel reiterated that the video would not add anything to the victim's trial testimony and argued that the admission of the video would constitute an improper bolstering of that testimony. Defense counsel argued that '[the victim] had clear recollection. She did not have any confusion about the details. This isn't a

case like some [in which] the child [victim] kind of broke down and had trouble and, therefore, the state tried to offer this evidence [of prior disclosure] . . . . [The victim] had clear detail, clear memory and so I think to pile on another version of her statement, it's very prejudicial and I think it's cumulative . . . . It's really important to be clear about bolstering. And so I think, here, when you're allowing . . . the jury to hear twice, once live in person, once on a [video-recorded] forensic interview from the same complainant, that really . . . is highly prejudicial. . . .

" '[T]here's nothing contained in that forensic interview which was not already testified to by [the victim] in front of this jury. It would simply be a rerun of her testimony, of course without any sort of cross-examination there, and I think . . . its prejudicial impact outweighs its probative value. I don't think it has any probative value. We've heard her testimony.' Defense counsel acknowledged, however, that she was unaware of any authority to support the proposition that a forensic interview [such as the one in the present case] is not admissible evidence.

"Responding to the argument that the evidence was cumulative, the prosecutor argued that the details provided by the victim during the forensic interview differed in some ways from the details provided by the victim during her trial testimony. For example, the prosecutor stated that the victim provided different descriptions of the alleged anal penetration by the defendant. The prosecutor also responded that the state was seeking the admission of the video under the medical diagnosis and treatment exception to the rule against hearsay.

"The [trial] court stated that 'the record obviously reflects that the [victim] did appear . . . at this trial and was subject to cross-examination, and the forensic interview will be admitted, and that's going to be admitted under the medical diagnosis and treatment [exception] to the hearsay rule, [§ 8-3 (5) of the Connecticut Code of Evidence], and our existing case law under *State* v. *Griswold*, [160 Conn. App. 528, 127 A.3d 189, cert. denied, 320 Conn. 907, 128 A.3d 952 (2015)]. You know, the purpose of the interview is to minimize trauma so a child doesn't have to repeat allegations to numerous officials such as school officials, [the department], [the] police . . . and it also . . . assesses medical and mental health needs of the particular child, and it also advances and coordinates the prompt investigation of suspected cases of child abuse. So, for those reasons, and no existing case law to support the defendant's position, I am going to deny the defendant's motion.' The video of the forensic interview was admitted into evidence during the testimony of Vidro Madigan." (Footnote omitted.) *State* v. *James K.*, supra, 209 Conn. App. 459–62.

Our standard of review for evidentiary claims is well

settled. "Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . . ." Conn. Code Evid. § 4-3. "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only whe[n] abuse of discretion is manifest or whe[n] an injustice appears to have been done. . . . On review by this court, therefore, every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Collins*, 299 Conn. 567, 582, 10 A.3d 1005, cert. denied, 565 U.S. 908, 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011). "In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse."[7] (Internal quotation marks omitted.) *State* v. *Roy D. L.*, 339 Conn. 820, 830, 262 A.3d 712 (2021).

"It is well settled that . . . [a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." (Internal quotation marks omitted.) Id. Section 8-3 (5) of the Connecticut Code of Evidence excludes from the hearsay rule "[a] statement made for purposes of obtaining a medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical diagnosis or treatment."

"As we have previously noted, the rationale behind the medical treatment exception [to the hearsay rule] is that a person's desire to recover his [or her] health incentivizes [that person] to tell the truth to individuals involved in [his or her] medical care. . . . [T]he presumption that such statements are reliable applies to statements made during a forensic interview when the surrounding circumstances could lead an objective observer to reasonably infer that the victim's statements were given in order to obtain medical treatment and diagnosis." (Citation omitted; internal quotation marks omitted.) *State* v. *Roy D. L.*, supra, 339 Conn. 833–34.

In the present case, the defendant does not dispute that the video recording of the victim's forensic interview was admissible pursuant to the medical treatment exception. Instead, the defendant asserts that the trial court did not engage in the balancing test required by § 4-3 of the Connecticut Code of Evidence, and, if the trial court had done so, it would have precluded the state from introducing the video recording into evidence because its probative value was outweighed by its prejudicial effect.

We first address the defendant's claim that the trial court did not engage in the balancing test required by § 4-3 of the Connecticut Code of Evidence. In doing so, we are mindful that this court previously has rejected

the idea that a trial court must engage in an on-the-record balancing or "use some talismanic phraseology in order to satisfy this balancing process. Rather . . . in order for this test to be satisfied, a reviewing court must be able to infer from the entire record that the trial court considered the prejudicial effect of the evidence against its probative nature before making a ruling." *State* v. *Nunes*, 260 Conn. 649, 689–90, 800 A.2d 1160 (2002).

As we explained previously, the defendant filed a motion in limine seeking to preclude the entirety of the video recording of the victim's forensic interview. In the motion, the defendant argued that "[a]ll or most of the information given by [the victim] to [Vidro Madigan] during her [March 9, 2016] interview would be the same as (or less than) that testified to during the trial, making the prior statement unnecessary and cumulative . . . ." (Emphasis omitted.) The defense did not point to any specific portions of the video recording that were unduly prejudicial either in the defendant's motion or during defense counsel's oral argument before the trial court. Instead, in his motion, the defendant asserted that the video recording, in its entirety, was unduly prejudicial because it would improperly bolster the credibility of the victim. Consistent therewith, during her argument on the motion, defense counsel claimed that it was prejudicial because it was cumulative and constituted improper bolstering, and, thus, the entire video recording should not be admitted.

We acknowledge that the trial court did not conduct an on-the-record balancing test. As a result, we, as the reviewing court, must look to see whether we can draw an inference from the record that the trial court considered the potential prejudice. A review of the entire record, particularly the parties' arguments before the trial court, reveals that the trial court considered the prejudicial effect of the evidence against its probative nature before making a ruling. We agree with the Appellate Court that the trial court "used broad language that suggests that it had considered and rejected the specific grounds of the defendant's objection by stating that it was unable to identify 'existing case law to support the defendant's position . . . .' " *State* v. *James K.*, supra, 209 Conn. App. 464–65. Stated simply, the trial court appears to have rejected the defendant's claim of prejudice in light of the arguments of the parties. It appears that the trial court also found the defendant's claim unpersuasive in part because there is no existing appellate case law requiring the exclusion of a forensic interview of a child victim of sexual assault under § 4-3 of the Connecticut Code of Evidence.[8]

We next address whether the trial court abused its discretion in admitting the video recording into evidence. We conclude that the video recording of the victim's forensic interview was probative of the particu-

lar details involving the incident in which the defendant had contact with the victim's vagina and anus. As the Appellate Court explained, "[t]he defendant was charged with two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1). One count was premised on the allegation [of penile-vaginal intercourse], and one count was premised on the allegation [of penile-anal intercourse]." Id., 466. In the video recording, the victim described the incident in detail. The defendant asserts that the video recording had limited probative value because the victim had testified to these facts at trial. However, even the defendant concedes that the victim described different details of the incident in the video recording than she did at trial. The defendant explains that, during her forensic interview, the victim "also described many . . . things in greater detail or in different ways than [during] her [trial] testimony, which fortified her allegations and made her appear sympathetic.

"For instance, [the victim] stated that, after the defendant put his thumb inside her bottom, [he] told her to open . . . her legs wider, and then she felt something go inside of her. . . . She did not mention anything about opening her legs during her testimony. She also stated that, ever since the assault happened, she had been worried because, 'I'm having white stuff come out of me.'" (Citation omitted.) A review of the evidence demonstrates that, although the victim's testimony at trial and the statements she made during her forensic interview overlapped, there were details in the video recording of her interview that were not contained in her trial testimony. See, e.g., *State* v. *Gray*, 342 Conn. 657, 690, 271 A.3d 101 (2022) ("[i]n precluding evidence solely because it is cumulative . . . the [trial] court should exercise care to avoid precluding evidence merely because of an overlap with the evidence previously admitted" (internal quotation marks omitted)). Therefore, on the basis of the foregoing, we conclude that the record establishes that the video recording was probative.

We next consider whether the trial court abused its discretion in concluding that the video recording of the victim's forensic interview was not unfairly prejudicial. "To be unfairly prejudicial, evidence must be likely to cause a disproportionate emotional response in the jury, thereby threatening to overwhelm its neutrality and rationality to the detriment of the opposing party. . . . A mere adverse effect on the party opposing admission of the evidence is insufficient. . . . Evidence is prejudicial when it tends to have some adverse effect [on] a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Miguel C.*, 305 Conn. 562, 575–76, 46 A.3d 126 (2012). "All evidence adverse to an opposing party is inherently prejudicial because it is damaging to that party's case. . . . For

exclusion, however, the prejudice must be unfair in the sense that it unduly arouse[s] the [jurors'] emotions of prejudice, hostility or sympathy . . . ." (Internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 545, 821 A.2d 247 (2003).

We agree with the trial court that the video recording was not unduly prejudicial to the extent that it contained new or inconsistent evidence regarding the crimes with which the defendant was charged.[9] We acknowledge that, in addition to new or inconsistent evidence, the video recording contained a large amount of consistent evidence. We caution that, when the prior consistent statements of an alleged victim of sexual assault are admitted in the absence of an applicable exception to the general rule that such statements are inadmissible at trial; see Conn. Code Evid. § 6-11 (b) and (c); there is a danger that the evidence will be misused to enhance the credibility of the victim.

Therefore, this case brings to our attention an issue this court has had the opportunity to address recently— namely, that defendants can request and trial courts should consider the redaction of video recordings of forensic interviews to limit their prejudicial effect. *State* v. *Roy D. L.*, supra, 339 Conn. 820, is instructive on this point. In *Roy D. L.*, we explained that "the trial court in [that] case [had] assessed the admissibility of the video recording of the forensic interview in its entirety and did not assess the admissibility of individual statements made during the interview. We recognize that the trial court's approach was likely a reflection of the position taken by defense counsel, who, in opposing the prosecutor's motion to admit the video recording, argued that the recording should be excluded in its entirety. In response to defense counsel's 'all or nothing' approach, the trial court remarked, '[s]o, it's either in or it's out, and, if it's in, it can be played in its entirety.' Given the formulation of defense counsel's opposition to the admission of the video recording . . . we believe that the trial court's response was reasonable. We do, however, take this opportunity to emphasize that the purpose underlying the medical treatment exception to the hearsay rule does not preclude a party from objecting to portions of statements made during forensic interviews that are either inadmissible for the purpose they are offered or are otherwise unduly prejudicial. Under such circumstances, the [trial] court, particularly during a jury trial, may exercise its discretion to redact portions of a forensic interview." Id., 829–30 n.7.

We note that many of the issues that the defendant now points to as reasons why the video recording of the victim's forensic interview was more prejudicial than probative could have been addressed by redacting the video. For instance, the defendant asserts that the video recording was unduly prejudicial because the victim's credibility was enhanced when "[Vidro Madigan]

indicated through her statements to [the victim] that she believed her allegations." Furthermore, the defendant claims that the victim's discussion in the video recording about a favorite picture that she had drawn with her and her mother's favorite colors also generated sympathy for the victim. The defendant also relies on the fact that the victim discussed and detailed the physical abuse that the defendant allegedly had engaged in, including beating the victim with an extension cord, hitting her with a belt, punching her in the jaw and leaving bruises on her body.

Although, on appeal, the defendant points to these portions of the video recording as creating undue prejudice, at trial, there was no request to redact the video or to identify with particularity those portions of the video that the defendant found particularly prejudicial. Instead, the defense challenged the admission of the video recording in its entirety. Without such a request, we cannot conclude that the Appellate Court incorrectly concluded that the trial court had not abused its discretion in admitting the video recording of the victim's forensic interview into evidence.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Moreover, in accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49, 851; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] The trial court imposed a sentence of twenty years of incarceration, five of which are mandatory, execution suspended after sixteen years, followed by fifteen years of probation. The jury found the defendant not guilty of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).

[2] "In reciting the facts that the jury reasonably could have found in reaching its verdict, we are mindful that, as we noted in footnote 1 of this opinion, the jury found the defendant not guilty of two counts of sexual assault in the first degree. One count of sexual assault required a finding that the defendant had penetrated the victim's anus, and the other count of sexual assault required a finding that the defendant had penetrated the victim's vagina. See General Statutes § 53a-70 (a) (1).

"The jury found the defendant guilty of risk of injury to a child in violation of § 53-21 (a) (2), which did not require a finding that penetration had occurred but required a finding that the defendant had contact with the intimate parts of the victim in a sexual and indecent manner that was likely to impair her health or morals." *State* v. *James K.*, 209 Conn. App. 441, 445 n.2, 267 A.3d 858 (2021).

[3] We note that the questions, as certified, focus on the actions of the trial court, but it is well established that, in "a certified appeal, our focus is on the judgment of the Appellate Court . . . ." (Citation omitted.) *State* v. *Nunes*, 260 Conn. 649, 658, 800 A.2d 1160 (2002); see also, e.g., *Burton* v. *Browd*, 258 Conn. 566, 570, 783 A.2d 457 (2001).

[4] We acknowledge that, in 1908, in *State* v. *McGee*, 80 Conn. 614, 69 A. 1059 (1908), this court explained that, "[u]nder our practice the [defendant] was not entitled, as a matter of strict right, to examine each [prospective] juror individually as to his qualifications. It was within the discretion of the trial court, and unless it appears that the discretion was improperly exercised, or that the defendant was injured by the refusal, it is not [a] ground

for a new trial." Id., 618–19. However, cases citing to *McGee* have applied the conjunctive iteration of the standard. See, e.g., *Duffy* v. *Carroll*, 137 Conn. 51, 56, 75 A.2d 33 (1950) ("[t]he extent to which parties should be allowed to go in examining [prospective] jurors as to their qualifications is a matter largely resting in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and [when] harmful prejudice appears to have been caused thereby" (internal quotation marks omitted)); accord *Sherman* v. *William M. Ryan & Sons, Inc.*, supra, 126 Conn. 578.

[5] Defense counsel herself framed the inquiry as one involving parental affection. She initially informed the trial court that she planned to ask, "do [the prospective jurors] have opinions about how parents might show affection to their children and . . . might they have opinions about whether parents kiss their children . . . as part of showing affection, and might they also have any strong opinions one way or another about whether . . . it's okay for parents to kiss their children on the lips, in terms of . . . is that a common thing in their mind in terms of showing affection?" (Internal quotation marks omitted.) *State* v. *James K.*, supra, 209 Conn. App. 447–48.

[6] The defendant does not assert that the trial court improperly admitted the video recording of the victim's forensic interview under the medical diagnosis and treatment exception to the hearsay rule but, rather, limits his claim to an allegation that the probative value of that video recording outweighed its prejudicial effect. Therefore, we do not consider whether the video recording of the forensic interview was properly admitted under the medical treatment exception.

[7] The defendant does not assert that the evidentiary impropriety is of constitutional magnitude.

[8] In support of his claim that admission of the video recording of the forensic interview was unduly prejudicial, the defendant cites to a number of out-of-state cases in which those courts have concluded that video recordings of forensic interviews are not admissible. To the extent that the defendant asks us to adopt a per se rule, we decline to do so.

[9] We disagree with the defendant's claim that the fact that the video recording showed the victim describing these incidents to a stranger at the age of twelve would unduly arouse sympathy for the victim. The victim testified to many of these same facts at trial. Without more, the approximately three year age difference between the video recording and the trial is not enough for us to conclude that the video recording in this respect would unduly arouse the sympathies of the jurors. See, e.g., *State* v. *Sandoval*, supra, 263 Conn. 545 ("[i]t is unlikely that the proffered evidence . . . would have improperly arouse[d] the emotions of the jur[ors] . . . in light of the victim's previous testimony" (citation omitted; internal quotation marks omitted)).